CINCINNATI BAR ASSOCIATION, *v.* HEITZLER.

[Cite as Cincinnati Bar Assn. v. Heitzler (1972), 32 Ohio St. 2d 214.]

(D. D. No. 72-3—Decided December 15, 1972.)

*Mr. R. O. Klausmeyer, Mr. John J. Getgey* and *Mr. C. Donald Heile,* for relator.

*Mr. Stanley E. Preiser, Mr. John B. Carrico* and *Mr. David C. McCue,* for respondent.

*Per Curiam.* Respondent alleges that his constitutional rights were violated and he was denied due process of law by the Board of Commissioners on Grievances and Discipline, contending that his counsel was denied the right to file a brief on the merits with the hearing panel; that a witness for relator and a member of the board sat with the board when they discussed this case and made their findings and recommendations; that he was denied the right to be heard by the board; that the board made its findings and recommendations without "an indepth review of the transcript of testimony and the exhibits"; that three members of the board had heard evidence against respondent in another proceeding; and that the board proceeded under Gov. R. V rather than Gov. R. VI.

A review of the record indicates that the proceedings of both the board and the hearing panel were conducted in accordance with Rule V of the Rules For The Government Of The Bar Of Ohio (formerly Rule XVIII of the Rules Of Practice).

While there was some confusion as to the time for filing briefs with the hearing panel, respondent was not prejudiced in this regard. The hearing panel and the board determined the matter prior to the actual filing of briefs by either relator or respondent. Furthermore, Gov. R. V confers no right upon either relator or respondent to file briefs before either the hearing panel or the board, and the filing of same is a matter within the discretion of the board or hearing panel. Respondent was given every opportunity to present any relevant evidence that he desired to present to the hearing panel.

Although a member of the board was a witness for the relator, the minutes of the board clearly indicate that such member "took no part in the discussion or voting" in the case.

Respondent was given a full and complete hearing before the hearing panel. Gov. R. V does not provide for an additional hearing before the entire board where the matter has been heard by a hearing panel. Neither does that rule, nor due process, require that each member of the board make "an indepth review of the transcript of testimony and the exhibits." The fact that three members of the board may have heard evidence against respondent in another proceeding does not disqualify them as members of the board. There is no indication that the findings and recommendations of the board herein were not predicated upon the complaint of relator, the answer of respondent, and the testimony and exhibits received in evidence before the hearing panel. Furthermore, there could be no prejudice to respondent in any event, since the action of the board was unanimous.

In addition, it is this court and not the board that makes the ultimate conclusion, both as to the facts and as to the action, if any, that should be taken. As stated in *Mahoning County Bar Assn.* v. *Ruffalo* (1964), 176 Ohio St. 263:

"In cases of this kind, the board of commissioners acts for and on behalf of this court. In doing so, it makes recommendations as to the facts which should be found and the action which should be taken by this court. However, this court has full responsibility for determining what the facts are and what action should be taken on those facts."

That both the hearing panel and the board afforded respondent a fair consideration and determination of the issues is shown by their action with regard to Counts 2, 3, and 11 of the complaint. The evidence clearly is sufficient to support a finding of misconduct with respect to all three counts. Yet, the hearing panel dismissed Count 3, and both

the hearing panel and the board found the evidence to be insufficient to support a finding of misconduct with regard to Counts 2 and 11.

Canon 4 of the Canons of Judicial Ethics requires that a judge's personal behavior in his everyday life "should be beyond reproach." Respondent admitted that he, while still married to, but separated from, his first wife, took his "girl friend" (now his second wife) with him, at his expense, on the trip to Majorca and on the two trips to Mexico, but he testified that they did not occupy the same room on any of the trips. Such conduct is not behavior beyond reproach within the meaning of Canon 4. Furthermore, the evidence permitted a finding of other offensive conduct by respondent during the Majorca trip. The board, while finding evidence of such conduct, found it to be "equally balanced, as to whether respondent's conduct was excessive" or "essentially different from that of the ordinary person, including members of the judiciary, under similar circumstances." However, a judge is charged with the responsibility of conforming to a higher standard of personal behavior than the ordinary person. A judge's conduct of personal behavior must be "beyond reproach." Improper conduct which may be overlooked when committed by the ordinary person, or even a lawyer, cannot be overlooked when committed by.a judge. By accepting his office, a judge undertakes to conduct himself in both his official and personal behavior in accordance with the highest standard that society can expect. As stated in Canon 34, "In every particular his conduct should be above reproach."

Respondent also admitted employing both his son and his daughter as charged by Count 11. Canon 12 provides that a judge should "avoid nepotism and undue favoritism in his appointments." The board, although finding this to be technically nepotism, found that it "did not amount to an intentional exploitation of nepotism."

Respondent contends further that the board should have proceeded pursuant to Gov. R. VI, rather than Gov.

R. V. Gov. R. VI relates to proceedings for removal of judges, whereas Gov. R. V relates to the disciplining of members of the legal profession of Ohio. They are not mutually exclusive. A member of the legal profession, who is also a judge, may engage in misconduct which not only requires his removal from office, but also requires that disciplinary action be taken against him with regard to his right to practice law after such removal from office. Gov. R. V expressly provides that disciplinary action may be instituted against a member of the legal profession for violation of the Canons of Judicial Ethics while such member of the legal profession holds the office of judge.

This court previously considered the matter and held, in paragraphs five and six of the syllabus of *Mahoning County Bar Assn.* v. *Franko* (1958), 168 Ohio St. 17, that:

"5. Judges who are required by statute to be attorneys at law must necessarily maintain their status as members of the legal profession, and the Supreme Court of Ohio, by virtue of its inherent power with reference to the disciplining of members of such profession, may provide by rule the basis for and the procedure to be followed in the disciplining of such members who hold judicial positions.

"6. The Canons of Judicial Ethics, as adopted by and made a rule of the Supreme Court of Ohio, provide a basis for the disciplining of members of the legal profession who hold judicial positions, and a breach thereof subjects such a member of the legal profession to disciplinary action according to the procedure set out in Rule XXVII of such court."

Respondent contends that since R. C. 2701.12 and Gov. R. VI were adopted subsequent to *Franko*, these constitute the exclusive method for disciplinary action against a member of the legal profession who is a judge for misconduct in office. We reject this contention. R. C. 2701.12 and Gov. R. VI do provide procedure for removal of a judge from office. Gov. R. V, on the other hand, does not pertain to the removal of judges from office, although proceedings under that rule may result in disqualification of a judge

because he is required to be a lawyer. See *State, ex rel. Saxbe,* v. *Franko* (1958), 168 Ohio St. 338.

Gov. R. V(4) provides that:

"* * * all proceedings with regard to mental illness and complaints and grievances involving alleged misconduct by attorneys and counselors at law and judges; all proceedings for the discipline of such attorneys and counselors at law, persons under suspension for an indefinite period or disbarred from the practice of law, and judges; and all proceedings for reinstatement as an attorney and counselor at law shall be brought, conducted and disposed of in accordance with the provisions of this rule. * * *"

Gov. R. V(5)(a) defines misconduct as:

"* * * any violation of any provision of the oath of office taken upon admission to the practice of law in this state, or any violation of the Code of Professional Responsibility or the Canons of Judicial Ethics as adopted by the court from time to time, disobedience of these rules or of the terms of an order imposing a suspension for an indefinite period from the practice of law, or the commission or conviction of a crime involving moral turpitude. * * *"

While it might be a more logical procedure, in cases of lawyers who are judges, to first proceed under Gov. R. VI for removal from office, and then proced under Gov. R. V with respect to disciplinary action as a member of the legal profession, we find no error or prejudice to respondent in proceeding first with proceedings pursuant to Gov. R. V. This is especially true in this case, since the respondent, at the outset of the filing of the complaint, requested that the proceedings be pursuant to Gov. R. V (then Rule XVIII of the Rules of Practice). The supplemental complaint alleged that respondent utilized improper methods in attempting to influence the proceedings to be pursuant to Rule XVIII (now Gov. R. V) rather than Rule XXI (now Gov. R. VI). Respondent, in his answer thereto, stated that "respondent admits that through his counsel by invitation he * * * did suggest that all interests were best served in the disposition of this cause if proceedings were

governed by Rule XVIII." Respondent cannot now be heard to complain that his "suggestion" was followed. The evidence received by the hearing panel also indicates that this was the desire of the respondent. Accordingly, respondent's motions to dismiss and to quash are overruled.

We now turn to consideration of the findings of the board. The finding of the board that the respondent's personal behavior in his everyday life, while a judge, gave the appearance of impropriety and was not beyond reproach (Count 1) and constituted a violation of Canon 4, is supported by, and required by, the evidence.

The board's finding that respondent violated Canons 13, 25 and 34 in connection with his business association with the Harmony Loan Company is also supported and required by the evidence. Respondent contends that he has not violated Canon 25 because other judges in Ohio also serve on boards of directors of savings and loan associations.

Canon 25 of the Canons of Judicial Ethics, as adopted by the then members of this court on January 27, 1954 (160 Ohio St.), differs from Canon 25 as adopted by the American Bar Association. Canon 25 provides that:

"A judge should avoid giving ground for any reasonable suspicion that he is utilizing the power or prestige of his office to persuade or coerce others to patronize or contribute, either to the success of private business ventures, or to charitable enterprises. He should, therefore, not enter into such private business, or pursue such a course of conduct, as would justify such suspicion, [n]or use the power of his office [or the influence of his name] to promote the business interests of others; he should not solicit for charities, nor should he enter into any business relation which, in the normal course of events reasonably to be expected, might bring his personal interest into conflict with the impartial performance of his official duties."

The foregoing quoted language, in brackets, is included in Canon 25 as adopted by the American Bar Association but is not included in Canon 25 as adopted by this

court in 1954. That court, by omitting the language in brackets from American Bar Canon 25, seemingly intended to give judges greater latitude in their business relationships than would be permitted by the American Bar Canon. In view thereof, it would appear that a judge does not necessarily violate Canon 25, as adopted in Ohio, *merely by serving* as a member of the board of directors of a loan company or a savings and loan association, where he in good faith discharges his duties as a director and nothing more is involved.*

If the fact of a judge's membership on the board of directors is used by the corporation to persuade others to patronize it or is used by the corporation to promote its business interests, the judge, by accepting membership on the board of directors, has given ground for "reasonable suspicion" that the judge is using "the power or prestige of his office" for that purpose. This is especially true if the judge does not regularly attend meetings of the board of directors, but is a member of the board in name only.

Even if under the Ohio Canon 25, respondent could serve as a member of the instant board of directors, he violated Canon 25 when Harmony Loan misused the fact of his membership. When he accepted membership on that board he undertook the affirmative duty to make certain that there would be no misuse made by Harmony of that membership.

---

*The additional language explains the conclusion to the contrary in Opinion 254 of the Committee on Professional Ethics and Grievances of the American Bar Association. The Committee on Legal Ethics and Professional Conduct of the Ohio Bar Association apparently did not take cognizance of the difference in language between Canon 25 as adopted for Ohio, and that as adopted by the American Bar Association, in its Opinion No. 19, which was reaffirmed and reported in the October 23, 1972, issue of Ohio Bar (XLV Ohio Bar No. 41, page 1423). *Whether this will continue to be the rule for conduct of judges depends upon the action of this court in its consideration of the new Code of Judicial Conduct adopted by the American Bar Association, Canon 4 of which expressly prohibits a judge from serving as an officer, director, employee or advisor of any business organization.*

Canon 13 provides in part, that a judge "should not suffer his conduct to justify the impression that any person can improperly influence him or unduly enjoy his favor "

Canon 33 provides, in part, that a judge should "in pending or prospective litigation before him be particularly careful to avoid such action as may reasonably tend to awaken the suspicion that his social or business relations or friendships constitute an element in influencing his judicial conduct."

Count 8 alleges that:

"On the board of directors of Harmony Loan Company have been Joseph Becker, bailiff for Judge Heitzler in both courts, and Robert Stone, a Cincinnati attorney who is a personal friend of Judge Heitzler, who appears with some frequency before Judge Heitzler, and frequently has lunch in a public restaurant with Judge Heitzler.

"James J. Matthews, president of Harmony Loan Company, was treasurer of Judge Heitzler's campaign in 1968 for the Court of Domestic Relations.

"Ralph Crisci, chief referee in Domestic Relations Court, was at one time assistant vice president and attorney for Harmony Loan Company.

"Sylvan Reisenfield, attorney for Harmony Loan Company, appears in the Domestic Relations Court before Judge Heitzler.

"Harmony Loan Company has from time to time issued brochures which contain the pictures and identifying names of its directors and officers, including Joseph Becker, Robert Stone and James Matthews, and Judge Heitzler.

"Relator says that in knowingly associating with Harmony Loan Company and its officers and directors and in permitting the publicity of his name as a judge in connection with the business of Harmony Loan Company, Judge Heitzler has violated Judicial Canons 13, 25, 33, and 34."

Respondent, as his answer to said count, stated that he "admits the allegations contained in paragraph 8 of said complaint and certificate filed herein, but specially

and specifically denies that he violated any Canon of Judicial Ethics." This admission, together with the evidence presented at the hearing, fully justifies a finding of misconduct by respondent in connection with his association with Harmony Loan Company.

Count 9 alleges misconduct by respondent in his handling of numerous cases in which Harmony Loan Company was a party while he was a judge of the Cincinnati Municipal Court. Respondent admitted handling such cases at a time when he was both a director of the company and an investor therein.

Canon 26 provides, in part, that "where he has a personal investment in an enterprise involved in litigation in the court, he should disqualify himself from acting in such litigation unless the interest is so slight that he does not believe it could affect the impartial performance of his official duties and the parties to such litigation are so informed and do not object."

Canon 29 provides, in part, that "a judge should abstain from performing or taking part in any judicial act in which his personal interests are involved."

Respondent contends that since the evidence indicates that he tried no "contested" case involving the Harmony Loan Company, and since the acts involved occurred during a prior term of office as judge of a different court, that he cannot now be charged with misconduct with regard thereto.

The evidence does not indicate that respondent heard any "contested" cases involving Harmony Loan Company, nor does it indicate that respondent disqualified himself from handling such cases. Respondent granted numerous default judgments and confessed judgments to Harmony Loan Company while a judge of Cincinnati Municipal Court at a time when he had a substantial investment in said company and was a director thereof. Respondent also signed garnishment orders, continuances, dismissals, and ruled upon some motions

The granting of a default judgment or a confessed

judgment necessarily involves a judicial determination of whether the plaintiff is entitled thereto. The granting of a default or confessed judgment to an enterprise in which a judge has a personal investment constitutes acting in litigation involving such enterprise, in violation of Canon 26. Even where the judge's interest is so slight that it could not affect the impartial performance of his official duties, the judge cannot so advise the adverse parties, nor do they have any opportunity to object, where the judgment is entered by default or confession. Furthermore, in view of the numerous cases involving Harmony Loan Company in which respondent performed judicial acts, there is no possibility that his actions were the result of oversight.

In support of his position, respondent relies upon authority to the effect that a default judgment granted by an interested judge does not render such judgment void or subject to collateral attack in the absence of fraud. See *Ashland Bank & Savings Co. v. Houseman* (1915), 5 Ohio App. 165. However, that has no bearing upon the propriety or ethical considerations of a judge so acting.

Respondent contends further that most of the cases in which he acted were first heard by a referee. However, the remainder of the cases were not so heard. Furthermore, assuming the cases were first heard by a referee and then the entry of judgment was signed by respondent, respondent took no precaution to prevent the appearance of impropriety in connection therewith, which the Canons of Judicial Ethics require of him.

In support of his contention that misconduct during a previous term cannot now be considered, respondent relies upon *State, ex rel. Vogt, v. Donahey* (1923), 108 Ohio St. 440; *McMillen v Diehl* (1934), 128 Ohio St. 212; and *State, ex rel. Stokes, v. Probate Court* (1970), 22 Ohio St. 2d 120, all of which hold that, under the applicable statutes, an officer cannot be removed from office for misconduct during a previous term of office. However, it is pointed out in *Stokes* that this is not the result where a statute specifically provides for disqualification or removal for miscon-

duct during a previous term, citing *In re Coppola* (1951), 155 Ohio St. 329, wherein it is stated, at page 332:

"* * * the General Assembly has the power to require reasonable qualifications for office and if a statute provides that misfeasance and malfeasance during a previous term shall be a ground for the removal of a public official during his existing term, such a statute must be given effect."

R. C. 2701.12 specifically provides that a violation of the Canons of Judicial Ethics by a judge "since first elected or appointed to judicial office" constitutes cause for removal of such judge from office.

Furthermore, as pointed out above, this is not a removal-from-office proceeding, although it may indirectly have that effect. Rather, this proceeding is a disciplinary action against a member of the legal profession, who is a judge, and will result in disciplinary action against respondent as a member of the legal profession. As stated in the second paragraph of the syllabus of *Mahoning County Bar Assn.* v. *Franko* (1958), 168 Ohio St. 17:

"The legal profession of Ohio includes every person who has been admitted to the practice of law in this state, by and under the rules for admittance thereto as adopted by the Supreme Court of Ohio, whose name is maintained on the Roll of Attorneys kept by such court, regardless of the subsequent capacity or status of such person."

There is no doubt that respondent was a member of the legal profession at the time involved, and continues to be, and it is that status which is the subject of this proceeding. Thus, the misconduct alleged occurred while respondent was a member of the legal profession of Ohio, regardless of whether it occurred during his existing, or a previous, term of office as a judge.

The evidence clearly supports the finding of the board that respondent violated the Canons of Judicial Ethics by handling numerous cases in which Harmony Loan Company was a party, at a time when he was a director of, and had a substantial investment in, said company.

As to Count 10, respondent admitted that he hired as a constable a man with a lengthy criminal record, knowing of such record. Canon 12 provides, in part, that "trustees, receivers, masters, referees, guardians and other persons appointed by a judge to aid in the administration of justice should have the strictest probity and impartiality and should be selected with a view solely to their character and fitness. The power of making such appointments should not be exercised by him for personal or partisan advantage." Canon 34 provides, in part, that a judge should "deal with his appointments as a public trust."

Respondent contends that these canons are not applicable to the employee in question because he was a "glorified usher" or "go for," being one who "fetches" the parties and their attorneys when it is time for their appearance. The employee was hired as a constable. Respondent described his duties as "to schedule various cases in before the various referees at the proper time." Respondent testified further with respect to this constable's duties that he "was to stand out in the hall and a list of the various hearings before the referees was furnished him. He would pull the folders and then as the respective attorneys came in with their clients ready to go on a case on preliminary motions and so forth, escort them into the various referee hearing rooms and come out. In the event he could not get cases or one referee was tied up in a rather lengthy case, then he would get another referee and shift cases around." We find that Canon 12 does apply to a constable with such duties.

Respondent also attempts to justify employment of this constable with a criminal record, on the grounds of rehabilitation, and testified that the practice followed by Hamilton County offices in the employment of persons with criminal records has been "if the man has paid his debt to society to give him a chance and put him to work." We agree with the board that such rehabilitation should have been attempted by some means other than employment as a constable in Domestic Relations Court. Respondent testi-

fied further that the employee with the criminal record had assisted him in his "most recent campaign for Domestic Relations Judge, and one or two of the prior campaigns for Municipal Court."

Canon 12 requires that persons employed to aid in the administration of justice should have the strictest probity and should be selected with a view solely to their character and fitness. Obviously, employees with criminal records employed for the purpose of aiding in their rehabilitation have not been "selected with a view solely to their character and fitness." "Probity" means "unimpeachable integrity." Obviously, a person with a lengthy criminal record, including one felony conviction for burglary, is not possessed of the strictest probity. Respondent completely ignored Canon 12 with respect to this employment.

Evidence was received that the employee in question solicited bribes from at least two persons, one of which was allegedly paid. When the person, from whom the bribe not paid was solicited, advised respondent of the solicitation, respondent did not immediately discharge the employee in question, but retained him as an employee until the advent of newspaper publicity concerning the alleged bribe attempt. The only investigation respondent made was to ask the employee in question, and respondent stated: "I kept him on because I had no evidence whatsoever that he had done anything wrong." This was apparently predicated upon the failure of the person reporting the solicitation for a bribe to produce for respondent a tape recording of the bribe solicitation. Respondent stated that: "* * * when he was suspended, he was first suspended when portions of an excerpt from a so-called tape appeared in the paper and he was linked to that and he was suspended without pay. * * *"

The finding by the board of misconduct by respondent in the hiring and retaining of the employee with a criminal record is fully supported by the evidence.

Respondent contends also that "even if the findings of fact by a board of commissioners are supported by the

evidence and confirmed by the Supreme Court of Ohio, the recommendations of the board of commissioners as to the disciplinary action to be administered are too severe for the violations proven under the circumstances.''

The facts of this case clearly indicate either that respondent has little or no concept of the ethical behavior required of a judge by the Canons of Judicial Ethics in both his personal and official conduct or that he has such concept, but thinks so little of it that he disregards it completely. As stated in the opinion in *Franko, supra,* at page 36: ''Either attitude toward ethics from an attorney at law undeniably would be reprehensible—from an attorney at law who has assumed a judgeship it is inexcusable.'' Misconduct by a lawyer who is a judge brings even greater discredit upon the legal profession than the same misconduct if performed by a lawyer who has not been entrusted with that high office. The board found that respondent by his conduct has violated Canons 4, 12, 13, 25, 26, 29, 33 and 34 of the Canons of Judicial Ethics.

Having carefully reviewed and considered the entire record, and the objections of the respondent and the briefs submitted, we conclude that the findings of the Board of Commissioners on Grievances and Discipline are fully supported by the evidence, and such findings are therefore affirmed. The objections to such findings and to the recommendations of the board are overruled. The recommendation of the board that respondent be indefinitely suspended from the practice of law is confirmed, and such discipline is hereby imposed.

*Judgment accordingly.*

O'NEILL, C. J., WHITESIDE, HERBERT, CORRIGAN, STERN, LEACH and BROWN, JJ., concur.

WHITESIDE, J., of the Tenth Appellate District, sitting for SCHNEIDER, J.