**[This opinion has been published in *Ohio Official Reports* at 82 Ohio St.3d 305.]**

CINCINNATI BAR ASSOCIATION *v.* WORTH.

[Cite as *Cincinnati Bar Assn. v. Worth*, 1998-Ohio-384.]

*Attorneys at law—Misconduct—Public reprimand—Performing legal services for others after appointment as a referee/magistrate.*

(No. 98-385—Submitted April 7, 1998—Decided July 8, 1998.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 96-73.

_____

{¶ 1} Robert W. Worth of Cincinnati, Ohio, Attorney Registration No. 0022604, respondent herein, was admitted to the bar in 1960. After many years of private practice, he was hired by the Hamilton County Probate Court in February 1989, where he served as referee, and later under the title of "magistrate," until he was discharged in February 1996.

{¶ 2} While he was referee/magistrate, respondent drafted several form wills, mostly for elderly friends and a relative. In 1990, Mary Higgins, an elderly lady who did not have a will, was a friend of respondent's aunt. As Higgins was about to be admitted to the hospital for an operation, the aunt asked respondent to prepare a will for Higgins. As a favor for his aunt, and without charge to Higgins, respondent prepared a will for her. In 1994, Esther M. Busch and Albert J. Busch, who were elderly and who had been long-time clients of respondent relying on him for advice on investments and on how to deal with family problems, asked respondent to update their wills. Respondent did so without charge. He also prepared a durable power of attorney for Albert. In April 1995 Alyce Thomas, an elderly lady who was a member of respondent's church, asked respondent to make some changes in a will he had drafted for her before he became a referee/magistrate. Respondent made the changes Thomas requested without charge. In October 1995,

at the request of a long-time friend and church member, Harriet Trautman, respondent changed the executor in a will he had drafted for her before he became a referee/magistrate, and did not charge her for the service. In September 1995, Mary M. Jervis, an elderly woman living on Social Security who had formerly been a secretary in respondent's church, requested respondent's assistance. Respondent, without charge, prepared a power of attorney to allow Jervis's daughter to handle real estate transactions for her. In December 1995, Jean T. Horn and Clifford E. Horn, respondent's closest friends for forty years and participants for twenty-eight years in a Bible study group with him, asked him to revise the wills he had prepared for them many years earlier. Respondent made the changes without charge. In 1996 Margaret M. and Russell L. Sammons, who were close friends of respondent and his wife, asked respondent to change the executor in their wills. Respondent made the change and took the $60 Russell Sammons insisted on paying him. In 1996, as respondent's niece, Amy C. Schoettmer, was about to undergo surgery, she asked him to draft wills for her and her husband. Respondent drafted the wills and received no fee. Christian L. Weishaupt, an old client of respondent's, died prior to respondent's being appointed referee/magistrate. Respondent opened the estate, and, at the time he was appointed, the estate was almost fully administered. Respondent remained counsel of record after he was appointed, anticipating the sale of some Florida property. When an action was filed against the estate by an ex-wife of one of the heirs in November 1991, respondent resigned as counsel.

{¶ 3} When respondent became referee/magistrate, his long-time friend, attorney Donald L. Weber of Cincinnati, succeeded him in a number of cases, and on some occasions respondent approved routine applications filed by Weber. Weber replaced respondent as counsel to the Weishaupt estate, and respondent, while serving as referee/magistrate, approved an application by Weber for a routine extension of time to file documents in the case. When Helen Tucker, an elderly former client of respondent, died, respondent declined to assume the role of

executor as designated in Tucker's will. However, respondent's wife, Tucker's alternate executor, did qualify and used Weber as her attorney. Respondent, without charge, helped his wife and Weber prepare routine documents in the case. Before he was appointed referee/magistrate, respondent was executor of the estate of Grant Terry. Respondent remained executor after his appointment for the purpose of concluding the only remaining matter, a claim for a tax refund. When the refund was denied, respondent closed the estate. Respondent, counsel for the estate of his long-time neighbor, Robert K. Creighton, closed the case before his appointment as referee/magistrate. After respondent's appointment, the Creighton estate was reopened to administer newly discovered assets and Weber was appointed counsel. Respondent helped Weber prepare some documents in the case. As referee/magistrate, respondent approved a routine application to extend time filed by Weber in the case. When Margaret O'Banion, a neighbor of respondent's wife's cousin, died, her son who lived out of town was appointed executor and employed Weber as his attorney. Because the son knew respondent better than he knew Weber, he frequently called respondent to see how the case was going. Respondent answered the inquiries and helped Weber get the matter settled expeditiously. While serving as a referee/magistrate, respondent approved an inventory in the estate of Charles C. Bohn that was presented to him by Weber.

{¶ 4} None of the persons for whom respondent drafted wills complained about his work. Respondent did not charge for these activities, and the only outside income he received during the time he was referee/magistrate was the $60 paid by Sammons, and $1,600 that respondent and his wife received for care and support of his aunt who was confined to a home for the elderly. This income was reported on Schedule C of respondent's Federal Income Tax Return, but respondent neglected to report the $60 as outside income from legal services on his annual report to the Ethics Commission in 1996.

**{¶ 5}** On February 12, 1996, Judge Wayne F. Wilke summarily dismissed respondent from the position of referee/magistrate because Judge Wilke had received information that respondent had been practicing law.

**{¶ 6}** On October 15, 1996, relator, Cincinnati Bar Association, filed a complaint charging that these activities of respondent constituted violations of his oath of office, the Code of Judicial Conduct, and the Code of Professional Responsibility. After respondent filed his answer, the matter was heard by a panel of the Board of Commissioners on Grievances and Discipline of the Supreme Court ("board"). The panel found the facts as stated, further found that respondent had not willfully filed false financial statements, and concluded that respondent had violated DR 1-102(A)(5) (engaging in conduct prejudicial to the administration of justice).

**{¶ 7}** In mitigation, respondent submitted evidence that he had a good reputation among members of the bar and that no formal ethical complaint had been filed against him in thirty-seven years of lawyering. He said that after many years the clients just kept coming back to him for advice and he could not say no. He further stated that it was his impression from the judge who appointed him as referee/magistrate that he could complete cases he was working on so long as he did not administer the cases in court. The panel recommended that respondent receive a public reprimand. The board adopted the findings, conclusions, and recommendation of the panel.

––––––––––––––––––––

*James C. Condit* and *Jon Hoffheimer,* for relator.

*Edward C. Perry* and *James N. Perry,* for respondent.

––––––––––––––––––––

**Per Curiam.**

**{¶ 8}** We accept the findings and conclusions of the board. In determining a sanction to be imposed, we consider the duty violated, the lawyer's mental state,

the injury caused, and the existence of aggravating or mitigating circumstances. *Warren Cty. Bar Assn. v. Bunce* (1998), 81 Ohio St.3d 112, 115, 689 N.E.2d 566, 568, and cases cited therein. In this matter respondent should not have performed legal services for others after his appointment as referee/magistrate, however minor those services might have been. Nevertheless, we note that respondent was not attempting to profit by these activities and that none of respondent's clients was harmed by his activities.

{¶ 9} The sanction imposed on respondent by the probate court was to discharge him from his position as referee/magistrate. In view of that sanction, we agree with the board with respect to the sanction this court should impose. Respondent is hereby publicly reprimanded. Costs taxed to respondent.

*Judgment accordingly.*

MOYER, C.J., RESNICK, PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.

DOUGLAS and F.E. SWEENEY, JJ., dissent because they would dismiss the action.

_____