OHIO STATE BAR ASSOCIATION *v.* REID.

[Cite as *Ohio State Bar Assn. v. Reid* (1999), 85 Ohio St.3d 327.]

328

(No. 98–1727—Submitted December 16, 1998—Decided April 7, 1999.)

Geoffrey Stern, Brian D. Weaver and William C. Mann, for relator.

John J. Chester and Donald C. Brey, for respondent.

FRANCIS E. SWEENEY, SR., J.    In disciplinary cases, the Supreme Court renders the final determination of the facts and conclusions of law.   Therefore, in assessing the propriety of the conduct in question and the appropriate sanction, if any, the Supreme Court is not bound by the board's findings of fact or conclusions of law.   *In re Complaint Against Harper* (1996), 77 Ohio St.3d 211, 215–216, 673 N.E.2d 1253, 1258, and *Cincinnati Bar Assn. v. Heitzler* (1972), 32 Ohio St.2d 214, 220, 61 O.O.2d 451, 454, 291 N.E.2d 477, 482.   Applying this standard, we have considered the board's findings of fact and conclusions of law, as well as the record and arguments presented to this court.   Upon our review, we find that relator failed to sustain its burden of proof as to four of the charged counts.   Therefore, we do not adopt many of the board's findings and conclusions.

At the outset, we note that judges are held to the highest standard of ethical conduct and will be held accountable for their transgressions.   See *Mahoning Cty. Bar Assn. v. Franko* (1958), 168 Ohio St. 17, 23, 5 O.O.2d 282, 285–286, 151 N.E.2d 17, 23; *Disciplinary Counsel v. Gallagher* (1998), 82 Ohio St.3d 51, 52, 693 N.E.2d 1078, 1079; *Harper,* 77 Ohio St.3d at 220, 673 N.E.2d at 1261.

However, by the same token, we stress that the same rules of proof applied in disciplinary proceedings to attorneys apply to judges as well.

In disciplinary proceedings, the relator bears the burden of proving the facts necessary to establish a violation. The complaint must allege the specific misconduct that violates the Disciplinary Rules and relator must prove such misconduct by clear and convincing evidence. Gov.Bar R. V(6)(J); *Disciplinary Counsel v. Jackson* (1998), 81 Ohio St.3d 308, 310, 691 N.E.2d 262, 263. "Clear and convincing evidence" has been defined as "that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford* (1954), 161 Ohio St. 469, 53 O.O. 361, 120 N.E.2d 118, paragraph three of the syllabus.

As to Count I, the foreclosure matter, we do not find, by clear and convincing evidence, that any violations of the Code of Judicial Conduct were committed. There is no Disciplinary Rule that prohibits judges from acquiring an interest in property formerly involved in suits before them. Indeed, public auctions are, by their nature, impartial with respect to any and all bidders.

Here, the property in question was offered twice before at a public auction. Finding no bidders, the parties to the foreclosure action entered into an agreed-upon sale price of $50,000. At the third auction, Everett Schafer, a partner to one of respondent's real estate partnerships, was the sole bidder and purchased the property at the agreed-upon price.

However, respondent testified that he had no knowledge of Schafer's purchase of the property, nor had he been approached concerning the establishment of the new partnership before he signed the confirmation-of-sale order. While a trier of fact could discount this testimony, doing so is not fatal to respondent's position. After respondent signed the October 16, 1992 confirmation order, he did not act in any other judicial capacity with respect to this matter.

We also find it noteworthy that the parties to the foreclosure action were not called as witnesses in this disciplinary action. Thus, there is no allegation that they were prejudiced or harmed in any way, or that respondent had anything to do with setting the purchase price. Indeed, if Schafer had not purchased the property, a fourth sheriff's sale would have been necessary, and the price of the property would have been lowered, resulting in less money received for the property.

Hence, while the timing of the real estate transaction may, at first blush, seem suspect, suspicion alone is insufficient to establish violations of former Canon 2(A) or 3(C)(1)(c) by clear and convincing evidence.

Pertaining to Count II, the failure to list the $150,000 Wallaby's stock investment on respondent's 1995 Financial Disclosure Statement, we again find that relator failed to sustain its burden of proof by clear and convincing evidence.

Former Canon 6(C) requires the filing of the disclosure statement. Respondent filed this document in 1995. Respondent testified that he issued the checks in 1995, but he did not receive the stock certificates until 1997. Since he did not have the certificates in 1995 and because the restaurant had not yet opened, respondent stated that it did not come to mind that he needed to list the Wallaby's investment for 1995. The restaurant opened in May 1996 and respondent's financial disclosure form for 1996 listed the Wallaby's investment.

Respondent argues that his failure to list his Wallaby's investment in his 1995 Financial Disclosure Statement was, at worst, negligent. We agree. R.C. 102.02(C) and (D) punish only "knowingly" failing to file or failing to disclose loans or investments over one thousand dollars. Cf. *Disciplinary Counsel v. Capers* (1984), 15 Ohio St.3d 122, 123–124, 15 OBR 273, 274, 472 N.E.2d 1073, 1074, where a judge filed erroneous docket reports. In *Capers*, it was found that the judge's error was due to confusion and carelessness, rather than misrepresentation and, thus, there was no violation on that count. Likewise, we find that while respondent's 1995 Financial Disclosure Statement was inaccurate, there was no knowing falsehood associated with it. There was no evidence establishing any intent or reason to conceal his involvement with Wallaby's. Indeed, respondent's involvement was a matter of public record, as a newspaper had already carried an article discussing his interest in the Wallaby's restaurant. We conclude that relator failed to prove violations of former Canon 6(C) or R.C. 102.02 by clear and convincing evidence.

We adopt the board's conclusions of law relating to Count III, finding no violations of former Canon 2(A) or 3(C). There was no evidence indicating that respondent negotiated, obtained, or executed any loan agreement with Ameri-First regarding Wallaby's.

As to Count IV, we find that respondent did not practice law out of his chambers as charged. There were no allegations or evidence that respondent used court personnel, equipment, or supplies, or held the courthouse out as his personal law office. While respondent used the courthouse address on six of the fifteen documents, respondent offered an explanation for doing so. He testified that at the time the six documents were prepared, he had received threatening phone calls. Thus, he testified, he used his business address for safety reasons. Nor were there allegations or evidence that respondent received compensation for preparing the real estate documents for his personal investments. It is not the practice of law when one performs legal services for himself or herself.

Relator failed to prove violations of former Canons 5(C)(2), 5(F) and 2(A) by clear and convincing proof.

However, we do find violations of former Canons 2(A) and 5(C) as they relate to Count V. It has always been respondent's position that he was a passive investor in all of his real estate partnerships. He specifically testified that partner Leslie Morehead was the "real estate man" who did the day-to-day work. Morehead would find the deals and bring them to respondent. Assuming this is so, we find that there was no reason for respondent to appear and speak on behalf of his partnership interests at zoning commission meetings. We agree with the board's conclusions that respondent's testimony was intended to lend the prestige of his office to advance the interests of himself and his partners. Thus, we find a violation of former Canon 2(A).

We also find a violation of former Canon 5(C) for respondent's actions relating to the *Shoup* case. This dispute did come before the Greene County Common Pleas Court, the court on which respondent served, necessitating the services of a visiting judge from another county to hear the action.

In *Disciplinary Counsel v. Allen,* we imposed a public reprimand upon a judge for her voluntary act of appearing in a thirty-second commercial on behalf of a private law firm. We believe that the same sanction is appropriate for respondent for his violations of former Canons 2(A) and 5(C) as charged in Count V. Respondent is hereby publicly reprimanded. Costs taxed to respondent.

*Judgment accordingly.*

DOUGLAS, RESNICK, PFEIFER and LUNDBERG STRATTON, JJ., concur.

MOYER, C.J., and COOK, J., dissent.

———

**MOYER, C.J., dissenting.** I respectfully dissent from the sanction imposed by the majority. I would suspend respondent for six months based on the conduct of respondent cited by the relator.

COOK, J., concurs in the foregoing dissenting opinion.