**[This opinion has been published in *Ohio Official Reports* at 85 Ohio St.3d 327.]**

OHIO STATE BAR ASSOCIATION *v.* REID.

[Cite as *Ohio State Bar Assn. v. Reid*, 1999-Ohio-374.]

*Judges—Misconduct—Public reprimand—Violations of former Canons 2(A) and 5(C) of the Code of Judicial Conduct—In disciplinary cases, the Supreme Court renders the final determination of the facts and conclusions of law— In disciplinary proceedings, relator bears the burden of proving the facts necessary to establish a violation.*

1. In disciplinary cases, the Supreme Court renders the final determination of the facts and conclusions of law. Therefore, in assessing the propriety of the conduct in question and the appropriate sanction, if any, the Supreme Court is not bound by the Board of Commissioners on Grievances and Discipline's findings of fact or conclusions of law. (*In re Complaint Against Harper* [1996], 77 Ohio St.3d 211, 215-216, 673 N.E.2d 1253, 1258, and *Cincinnati Bar Assn. v. Heitzler* [1972], 32 Ohio St.2d 214, 220, 61 O.O.2d 451, 454, 291 N.E.2d 477, 482, followed.)

2. In disciplinary proceedings, the relator bears the burden of proving the facts necessary to establish a violation. The complaint must allege the specific misconduct that violates the Disciplinary Rules and relator must prove such misconduct by clear and convincing evidence.

(No. 98-1727—Submitted December 16, 1998—Decided April 7, 1999.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 97-65.

———————————

{¶ 1} On August 11, 1997, relator, Ohio State Bar Association, filed a five-count complaint alleging that respondent, Judge M. David Reid, a.k.a. Marlin David

Reid, of Beavercreek, Ohio, Attorney Registration No. 0008097, a judge of the Greene County Court of Common Pleas since 1979, violated several provisions of the Code of Judicial Conduct and R.C. 102.02. Respondent answered, and the matter was heard by a panel of the Board of Commissioners on Grievances and Discipline of the Supreme Court ("board").

{¶ 2} Count I involved a foreclosure matter that had been on respondent's docket. Eleven days after signing the journal entry confirming the sale of the property in question, respondent joined in the partnership that had purchased the property at the sheriff's sale. The panel concluded that by his conduct, respondent violated former Canon 2(A), "[a] judge should respect and comply with the law and should conduct himself at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary." Given the timing of the order issued in the foreclosure action and the formation of the partnership, the panel believed that, at the very least, there was an appearance of impropriety. However, the panel found no evidence of a violation of former Canon 3(C)(1)(c) (a judge should disqualify himself if he knows he has a substantial financial interest in the subject matter in controversy).

{¶ 3} In Count II, the panel found that respondent failed to disclose his $150,000 investment in Wallaby's, Inc. on his 1995 Ohio Ethics Commission Financial Disclosure Statement. In August 1994, respondent's son and others had formed Wallaby's for purposes of starting a restaurant, and in March 1995, respondent had issued five checks to Wallaby's for investment purposes. This investment was not listed on the 1995 disclosure form. However, his 1996 Financial Disclosure Statement did indicate his interest in Wallaby's.

{¶ 4} For these actions, the panel concluded that respondent violated former Canon 6, which provides that a judge should regularly file financial disclosure statements required by statutes, and, specifically, R.C. 102.02(C), which requires

that disclosure statements be timely filed and set forth all loans and investments valued over one thousand dollars.

{¶ 5} In Count III, the complaint alleged that respondent dismissed a lawsuit against AmeriFirst Bank, N.A., after it helped finance Wallaby's construction with a $600,000 loan, and that respondent never disclosed his interest to any of the parties in violation of former Canons 3(C) and 2(A). For these allegations, the panel did not find any violations of the Canons.

{¶ 6} As to Count IV, the panel found that between 1985 and 1994, fifteen real estate documents were filed. Either respondent or one of his partnerships was connected with each document. On six of these documents, respondent's judicial address at the courthouse was used in connection with respondent's name as preparer. The panel considered, and apparently rejected, respondent's assertion that the use of the courthouse address was for safety concerns. None of the documents prepared by respondent identified him as a judge. The panel could find no evidence that respondent acted in any other capacity than his own in regard to these documents. Nor did the panel find evidence that respondent received compensation for preparing these documents.

{¶ 7} However, the panel found violations of former Canon 2(A) and Canons 5(C) and (F). The panel found that the preparation of the documents is the practice of law and had the potential of involving respondent in transactions with lawyers or persons likely to come before the court on which he serves. Moreover, the panel concluded that respondent's active involvement in real estate transactions evidenced by these documents provides an appearance of impropriety with the potential for eroding public confidence in the judiciary. However, the panel did not believe that respondent's conduct rose to the level of that scrutinized by this court in *Ohio State Bar Assn. v. Dye* (1991), 61 Ohio St.3d 72, 572 N.E.2d 666, since there was no indication that anyone was under the impression that respondent's

chambers were his private office. Nor was there any evidence that respondent's official duties were interrupted for these actions.

**{¶ 8}** Finally, as to Count V, which involves respondent's alleged appearances before the Beavercreek Planning Commission, the panel found that respondent, while a judge, had spoken on at least four occasions at governmental meetings and before the commission. On one occasion, in the *Shoup* case, respondent appeared before the planning commission, advocating a zoning variance for real estate that one of his partnerships, Terra Developers, had a contract to purchase. The contract to purchase was contingent upon obtaining the variance. The request was denied, and the property owner appealed the ruling to the Greene County Court of Common Pleas. Terra Developers was an intervening party. Ultimately, the variance was secured by a settlement, and respondent, not Terra Developers, purchased the property. The appearances before the planning commission did not involve any requests concerning respondent's personal residence.

**{¶ 9}** As to this count, violations of former Canons 2(A) and 5(C) were found. A violation of former Canon 2(A) was found because respondent's testimony was not required, as other partners could have presented testimony concerning the zoning requests. The panel found that respondent's testimony was intended to lend the prestige of his office to advance his interests and those of others with whom he was aligned in a business partnership. In addition, his activity was found to have violated former Canon 5(C) because the dispute about which he testified did come before his court, and he later purchased the property.

**{¶ 10}** In mitigation, the panel found that respondent did not receive substantial financial gain as to any of the counts. In addition, the panel noted that the judicial order involved in Count I was a routine order in a foreclosure action and was not unreasonable under the circumstances. Relating to Count II, the panel found that respondent did disclose his interest in Wallaby's in his 1996 Financial

Disclosure Statement, and, therefore, its omission in his 1995 Financial Disclosure Statement, when viewed in connection with the other evidence, was mitigated. As to Count IV, the panel found that the use of the courthouse address did not provide any pecuniary benefit to respondent. Finally, as to Count V, respondent's only benefit was the purchase of the property. Further, the parties voluntarily settled the matter under the scrutiny of a Clark County visiting judge.

{¶ 11} In recommending a public reprimand, the panel relied upon the decisions of *Ohio State Bar Assn. v. Dye; Disciplinary Counsel v. Allen* (1997), 79 Ohio St.3d 494, 684 N.E.2d 31; and *Cincinnati Bar Assn. v. Worth* (1998), 82 Ohio St.3d 305, 695 N.E.2d 749, all of which imposed this sanction. The board adopted the findings, conclusions, and recommendation of the panel.

———————————

*Geoffrey Stern, Brian D. Weaver* and *William C. Mann,* for relator.

*John J. Chester* and *Donald C. Brey,* for respondent.

———————————

**FRANCIS E. SWEENEY, SR., J.**

{¶ 12} In disciplinary cases, the Supreme Court renders the final determination of the facts and conclusions of law. Therefore, in assessing the propriety of the conduct in question and the appropriate sanction, if any, the Supreme Court is not bound by the board's findings of fact or conclusions of law. *In re Complaint Against Harper* (1996), 77 Ohio St.3d 211, 215-216, 673 N.E.2d 1253, 1258, and *Cincinnati Bar Assn. v. Heitzler* (1972), 32 Ohio St.2d 214, 220, 61 O.O.2d 451, 454, 291 N.E.2d 477, 482. Applying this standard, we have considered the board's findings of fact and conclusions of law, as well as the record and arguments presented to this court. Upon our review, we find that relator failed to sustain its burden of proof as to four of the charged counts. Therefore, we do not adopt many of the board's findings and conclusions.

{¶ 13} At the outset, we note that judges are held to the highest standard of ethical conduct and will be held accountable for their transgressions. See *Mahoning Cty. Bar Assn. v. Franko* (1958), 168 Ohio St. 17, 23, 5 O.O.2d 282, 285-286, 151 N.E.2d 17, 23; *Disciplinary Counsel v. Gallagher* (1998), 82 Ohio St.3d 51, 52, 693 N.E.2d 1078, 1079; *Harper,* 77 Ohio St.3d at 220, 673 N.E.2d at 1261. However, by the same token, we stress that the same rules of proof applied in disciplinary proceedings to attorneys apply to judges as well.

{¶ 14} In disciplinary proceedings, the relator bears the burden of proving the facts necessary to establish a violation. The complaint must allege the specific misconduct that violates the Disciplinary Rules and relator must prove such misconduct by clear and convincing evidence. Gov.Bar R. V(6)(J); *Disciplinary Counsel v. Jackson* (1998), 81 Ohio St.3d 308, 310, 691 N.E.2d 262, 263. "Clear and convincing evidence" has been defined as "that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford* (1954), 161 Ohio St. 469, 53 O.O. 361, 120 N.E.2d 118, paragraph three of the syllabus.

{¶ 15} As to Count I, the foreclosure matter, we do not find, by clear and convincing evidence, that any violations of the Code of Judicial Conduct were committed. There is no Disciplinary Rule that prohibits judges from acquiring an interest in property formerly involved in suits before them. Indeed, public auctions are, by their nature, impartial with respect to any and all bidders.

{¶ 16} Here, the property in question was offered twice before at a public auction. Finding no bidders, the parties to the foreclosure action entered into an agreed-upon sale price of $50,000. At the third auction, Everett Schafer, a partner to one of respondent's real estate partnerships, was the sole bidder and purchased the property at the agreed-upon price.

{¶ 17} However, respondent testified that he had no knowledge of Schafer's purchase of the property, nor had he been approached concerning the establishment of the new partnership before he signed the confirmation-of-sale order. While a trier of fact could discount this testimony, doing so is not fatal to respondent's position. After respondent signed the October 16, 1992 confirmation order, he did not act in any other judicial capacity with respect to this matter.

{¶ 18} We also find it noteworthy that the parties to the foreclosure action were not called as witnesses in this disciplinary action. Thus, there is no allegation that they were prejudiced or harmed in any way, or that respondent had anything to do with setting the purchase price. Indeed, if Schafer had not purchased the property, a fourth sheriff's sale would have been necessary, and the price of the property would have been lowered, resulting in less money received for the property.

{¶ 19} Hence, while the timing of the real estate transaction may, at first blush, seem suspect, suspicion alone is insufficient to establish violations of former Canon 2(A) or 3(C)(1)(c) by clear and convincing evidence.

{¶ 20} Pertaining to Count II, the failure to list the $150,000 Wallaby's stock investment on respondent's 1995 Financial Disclosure Statement, we again find that relator failed to sustain its burden of proof by clear and convincing evidence.

{¶ 21} Former Canon 6(C) requires the filing of the disclosure statement. Respondent filed this document in 1995. Respondent testified that he issued the checks in 1995, but he did not receive the stock certificates until 1997. Since he did not have the certificates in 1995 and because the restaurant had not yet opened, respondent stated that it did not come to mind that he needed to list the Wallaby's investment for 1995. The restaurant opened in May 1996 and respondent's financial disclosure form for 1996 listed the Wallaby's investment.

**{¶ 22}** Respondent argues that his failure to list his Wallaby's investment in his 1995 Financial Disclosure Statement was, at worst, negligent. We agree. R.C. 102.02(C) and (D) punish only "knowingly" failing to file or failing to disclose loans or investments over one thousand dollars. Cf. *Disciplinary Counsel v. Capers* (1984), 15 Ohio St.3d 122, 123-124, 15 OBR 273, 274, 472 N.E.2d 1073, 1074, where a judge filed erroneous docket reports. In *Capers*, it was found that the judge's error was due to confusion and carelessness, rather than misrepresentation and, thus, there was no violation on that count. Likewise, we find that while respondent's 1995 Financial Disclosure Statement was inaccurate, there was no knowing falsehood associated with it. There was no evidence establishing any intent or reason to conceal his involvement with Wallaby's. Indeed, respondent's involvement was a matter of public record, as a newspaper had already carried an article discussing his interest in the Wallaby's restaurant. We conclude that relator failed to prove violations of former Canon 6(C) or R.C. 102.02 by clear and convincing evidence.

**{¶ 23}** We adopt the board's conclusions of law relating to Count III, finding no violations of former Canon 2(A) or 3(C). There was no evidence indicating that respondent negotiated, obtained, or executed any loan agreement with AmeriFirst regarding Wallaby's.

**{¶ 24}** As to Count IV, we find that respondent did not practice law out of his chambers as charged. There were no allegations or evidence that respondent used court personnel, equipment, or supplies, or held the courthouse out as his personal law office. While respondent used the courthouse address on six of the fifteen documents, respondent offered an explanation for doing so. He testified that at the time the six documents were prepared, he had received threatening phone calls. Thus, he testified, he used his business address for safety reasons. Nor were there allegations or evidence that respondent received compensation for preparing the real estate documents for his personal investments. It is not the practice of law

when one performs legal services for himself or herself. Relator failed to prove violations of former Canons 5(C)(2), 5(F) and 2(A) by clear and convincing proof.

{¶ 25} However, we do find violations of former Canons 2(A) and 5(C) as they relate to Count V. It has always been respondent's position that he was a passive investor in all of his real estate partnerships. He specifically testified that partner Leslie Morehead was the "real estate man" who did the day-to-day work. Morehead would find the deals and bring them to respondent. Assuming this is so, we find that there was no reason for respondent to appear and speak on behalf of his partnership interests at zoning commission meetings. We agree with the board's conclusions that respondent's testimony was intended to lend the prestige of his office to advance the interests of himself and his partners. Thus, we find a violation of former Canon 2(A).

{¶ 26} We also find a violation of former Canon 5(C) for respondent's actions relating to the *Shoup* case. This dispute did come before the Greene County Common Pleas Court, the court on which respondent served, necessitating the services of a visiting judge from another county to hear the action.

{¶ 27} In *Disciplinary Counsel v. Allen,* we imposed a public reprimand upon a judge for her voluntary act of appearing in a thirty-second commercial on behalf of a private law firm. We believe that the same sanction is appropriate for respondent for his violations of former Canons 2(A) and 5(C) as charged in Count V. Respondent is hereby publicly reprimanded. Costs taxed to respondent.

*Judgment accordingly.*

DOUGLAS, RESNICK, PFEIFER and LUNDBERG STRATTON, JJ., concur.

MOYER, C.J., and COOK, J., dissent.

————————————

**MOYER, C.J., dissenting.**

{¶ 28} I respectfully dissent from the sanction imposed by the majority. I would suspend respondent for six months based on the conduct of respondent cited by the relator.

COOK, J., concurs in the foregoing dissenting opinion.

——————————