


FILED

Feb 26 2025, 10:33 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

IN THE

# Indiana Supreme Court

Supreme Court Case No. 24S-JD-403

## In the Matter of the Honorable Calvin D. Hawkins, Judge of the Lake Superior Court,
*Respondent.*

Decided: February 26, 2025

Judicial Discipline Action

**Per Curiam Opinion**

Justices Massa, Slaughter, and Molter concur.
Chief Justice Rush and Justice Goff dissent.

**Per curiam.**

We find that Respondent, the Honorable Calvin Delee Hawkins, Judge of the Lake Superior Court, engaged in judicial misconduct by sexually harassing court employees throughout his judicial tenure.

The matter is before us on the Indiana Commission on Judicial Qualifications' ("Commission's") "Notice of the Institution of Formal Proceedings and Statement of Charges" against Respondent. The parties jointly tendered a "Statement of Circumstances and Conditional Agreement for Discipline" stipulating to the below facts and agreed sanction—a thirty-day unpaid suspension from office.

## Procedural Background and Facts

Respondent was appointed judge of the Lake Superior Court in July 2007 and began serving in that capacity two months later.

After his appointment to the bench, Respondent began a pattern of conduct that included unwanted hugs and inappropriate comments toward his staff. Respondent began supervising J.P., a court staff member, in 2007. Between 2007 and 2020, Respondent made unwanted physical contact with J.P., including hugging J.P. and trying to rub her arms or shoulders. Respondent also commented on J.P.'s physical appearance sporadically throughout the years in a manner that made her uncomfortable. Specific instances included when she wore makeup or wore a sleeveless blouse. In 2023, J.P. met with Respondent to discuss the training of another staff member on Trial Rule 41(E) dismissals. During their interaction, Respondent stated in reference to the contemplated 41(E) training, "Shall we have a threesome?" J.P. paused to make sure she understood what Respondent said, but he did not rephrase his question.

J.P. consistently told Respondent that his physical advances were unwelcome, including by: (1) informing Respondent that she did not want to be hugged by him because it made her uncomfortable; (2) informing Respondent not to come near her work area in the courthouse because it made her uncomfortable; and (3) turning her back to Respondent and

telling him to keep his hands to himself. In his 2024 deposition, Respondent acknowledged that on one of the last occasions when he hugged J.P., he knew she was uncomfortable due to the look on her face. Respondent agrees he engaged in a pattern of inappropriate behavior towards J.P. that included unwelcome comments and physical conduct of a sexual nature.

On October 19, 2023, Respondent was scheduled to preside over a civil jury trial in Lake Superior Court, Civil Division Room Two. But due to malfunctioning equipment, the trial moved to Room One. Court staff for Room One and Room Five assisted with setting up the recording equipment for the trial in Room One. Respondent introduced himself to one of the staff, F.R. In doing so, Respondent rubbed F.R.'s shoulder in an unwanted manner. Although F.R. was wearing a turtleneck at the time, she put on an additional sweater after her interaction with Respondent due to the unwanted touching and the manner in which Respondent stared at her chest.

Staff member T.B. also helped that day. While T.B. was kneeling to work on equipment set-up, Respondent made a comment about T.B. being "on her hands and knees." T.B. interpreted the comment as a sexual reference and became uncomfortable because of the way Respondent looked at her after making the comment. Another staff member heard the comment and also interpreted it as a sexual reference.

The next day, Respondent went to Room Five's offices for jury paperwork. Respondent spoke with F.R., who agreed to retrieve the paperwork. F.R. told Respondent she would bring the paperwork to him, but Respondent went to F.R.'s office and stood in her doorway anyway. F.R. was uncomfortable because of the way Respondent greeted her and because there was not adequate space for both of them in her office. When F.R. handed the paperwork to Respondent in the hallway, Respondent tried to hug F.R. by attempting to put his arm around her and leaned in to try to kiss her. F.R. physically pushed Respondent away. T.B. observed the attempted hug and kiss.

On October 25, 2023, F.R. received a card from Respondent in the mail, which stated, "It was such a pleasure meeting you last week. Thank you

for being so gracious as I have some 'loose screws' in my head and may have appeared too forward." F.R. was concerned how Respondent learned her last name, as she was not listed in the courthouse directory. Respondent learned F.R.'s name from T.B.

Respondent agrees that the foregoing interactions constitute harassment.

Between 2007 and 2023, Respondent also habitually hugged people with whom he came into contact, including court staff and others around the courthouse. And Respondent's inappropriate touching continued into early 2024 when he hugged and kissed staff member C.G. on her head or cheek when C.G. returned from an overseas trip. In his March 2024 deposition, Respondent acknowledged that his unwelcome physical contact with court staff had a negative effect on the integrity of the judiciary.

## Discussion

Respondent agrees that his conduct violated the following Code of Judicial Conduct provisions:

- Rule 1.2, requiring judges to act at all times in a manner that promotes public confidence in the independence, integrity, and impartiality of the judiciary, and avoid impropriety and the appearance of impropriety;
- Rule 2.3(B), prohibiting judges from manifesting bias or prejudice or engaging in harassment, including but not limited to bias, prejudice, or harassment based upon race, sex, gender, religion, national origin, ethnicity, disability, age, sexual orientation, marital status, socioeconomic status, or political affiliation, in the performance of judicial duties; and
- Rule 2.8(B), requiring judges to be patient, dignified, and courteous to litigants, jurors, witnesses, lawyers, court staff, court officials, and others with whom the judge deals in an official capacity.

The parties agree that an appropriate sanction is a thirty-day suspension without pay. A judicial suspension is a very severe sanction, and it is fully warranted here.

Sexual harassment has a pernicious effect in the workplace, impacting victims, witnesses, and office culture. *See Matter of Seaman*, 133 N.J. 67, 99, 627 A.2d 106, 123 (N.J. 1993) (noting consequences of sexual harassment such as insomnia, nervousness, headaches, weight gain or loss, psychological and physical stress, and adverse impacts on work performance). And sexual harassment by a judge is particularly reprehensible because it abuses the power imbalance between judges and subordinate judicial employees. *See Matter of Scipione*, 547 P.3d 1100, 1108 (Colo. 2024). Indeed, Respondent agrees that his misconduct—which endured for sixteen years—had a negative effect on the integrity of the judiciary.

"The purpose of judicial discipline is not primarily to punish a judge, but rather to preserve the integrity of and public confidence in the judicial system and, when necessary, [to] safeguard the bench and public from those who are unfit." *Matter of Meade*, 200 N.E.3d 448, 452 (Ind. 2023) (quotations and citation omitted). The sanction must be designed to deter similar misconduct and assure the public that judicial misconduct will not be condoned. *Id*. And while the public-at-large is often the victim of a judge's misconduct, here we have specific court employees made to feel uncomfortable and violated by Respondent's actions.

"In determining whether the recommended sanction is appropriate, we consider any aggravating and mitigating circumstances before the Court." *Matter of Brown*, 4 N.E.3d 619, 628 (Ind. 2014). Here, the parties call our attention to several "agreed sanction factors." They note that Respondent has cooperated with these disciplinary proceedings to arrive at an agreed sanction, which we are generally hesitant to disturb. *See Meade*, 200 N.E.3d at 452 ("[Conditional] agreements are often the product of lengthy negotiations and may merit a less severe sanction than might otherwise be imposed after a trial on the merits."). Cooperation appears particularly important in this case, as it spares the victims from having to publicly

testify about Respondent's transgressions. *See Matter of Weir*, 668 N.E.2d 679, 680 (Ind. 1996).

The parties also note that Respondent has not faced prior judicial or attorney discipline, and he occupies several other leadership roles in his community, including devoting his time to youth outreach initiatives and his church. Respondent also has been given numerous awards over the years, such as honorary doctorates and the Sagamore of the Wabash. While these experiences further illustrate the depth of the trust betrayed, they also reflect Respondent's capacity to regain it and to reform. *See Matter of Cooper*, 161 N.E.3d 362, 364 (Ind. 2021).

In *Matter of McClain*, we found words from the Ohio Supreme Court helpful, and they remain so here: "'By accepting his office, a judge undertakes to conduct himself in both his official and personal behavior in accordance with the highest standard that society can expect.'" 662 N.E.2d 935 (Ind. 1996) (quoting *Cincinnati Bar Ass'n v. Heitzler*, 291 N.E.2d 477, 482 (Ohio 1972)). And our own rules require judges to avoid even the appearance of impropriety. *See* Code of Judicial Conduct Rule 1.2. Respondent's misconduct was serious, included repeated physical advances toward employees despite their express rejections, and was an abject abuse of his position and power. Through his pattern of misconduct, Respondent has fallen far short of the standard required of him.

Based on those concerns, and the parties' agreed sanction factors, the Court concludes that the sanction the Commission and Respondent propose is warranted here.

## Conclusion

Calvin Delee Hawkins shall be suspended from the office of Judge of the Lake Superior Court without pay for thirty (30) days commencing at 12:01 a.m. on March 31, 2025.  The suspension shall terminate and Respondent shall automatically be reinstated to office at 12:01 a.m. on April 30, 2025. This discipline terminates the disciplinary proceedings relating to the circumstances giving rise to this case.

Consistent with the parties' conditional agreement, costs will be assessed against Respondent. And Respondent shall complete at his own expense, including travel, a course in sexual harassment training through the National Center for State Courts.

Massa, Slaughter, and Molter, JJ., concur.
Rush, C.J., and Goff, J., dissent, believing Respondent should be removed from office due to his repeated acts of sexual harassment in the workplace.

ATTORNEYS FOR RESPONDENT
James Voyles, Jr.
Jennifer M. Lukemeyer
Indianapolis, Indiana

ATTORNEYS FOR INDIANA COMMISSION ON
JUDICIAL QUALIFICATIONS
Adrienne L. Meiring, Counsel to the Commission
Stephanie K. Bibbs, Deputy Director
Jill E. Esenwein, Staff Attorney
Indianapolis, Indiana