OPINION
{¶ 1} In Case Number 14-06-49, Defendant-Appellant, John Davisson, appeals the judgment of the Union County Court of Common Pleas finding him to be in contempt. On appeal, Davisson asserts that the trial court's finding of contempt is not supported by the manifest weight of the evidence and that the trial court abused its discretion. In Case Number 14-06-50, Defendant-Appellants, Treacle Creek Investments (hereinafter referred to as "Treacle Creek") and Davisson (hereinafter Treacle Creek and Davisson jointly referred to as "Appellants"), appeal the judgment of the Union County Court of Common Pleas granting Plaintiff-Appellee's, Millcreek Township Board of Trustees (hereinafter referred to as "Trustees"), request for an injunction. On appeal, Appellants assert that the trial court's granting of the injunction was contrary to Ohio law. Based on *Page 3 
the following, in both case numbers 14-06-49 and 14-06-50, we affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.
 {¶ 2} Because both cases arise from the same set of circumstances and are interrelated, we summarize the following undisputed facts.
 {¶ 3} In August 1994, the Millcreek Township Board of Zoning Appeals (hereinafter referred to as "BZA") issued a conditional use permit (hereinafter referred to as "CUP") to Davisson allowing him to operate his excavation business, Badger Excavating, as a home occupation/service business on his property located at 12140 Watkins Road, Marysville, Ohio (hereinafter referred to as "the property"). The property was located in a U-1 residential rural district under the Millcreek Township Zoning Resolution (hereinafter referred to as "zoning resolution"). The CUP included three conditions: (1) a five-year duration limit, (2) a requirement that Davisson contact the Marysville Fire Department regarding fire prevention for his fuel tanks, and (3) a requirement that Davisson screen or hide the fuel tanks located on the property.
 {¶ 4} In February 2000, Davisson applied for a renewal of the CUP, describing the conditional use on the application as the "same as before (to operate Badger Excavating from residential home/lot)." (Application, p. 1). The BZA renewed the CUP. *Page 4 
 {¶ 5} In July 2003, the Trustees sought a declaratory judgment and injunction against Davisson, alleging that he violated the CUP by operating additional businesses contrary to the zoning resolution, specifically Wolverine Trucking and Equipment, LLC, Cheetah Express, and Gopher Employee Leasing, LLC, and by failing to screen the fuel tanks, materials, and debris on the property. Additionally, the Trustees alleged that Davisson violated two other provisions of the zoning resolution by maintaining a collection of junk, unlicensed, or otherwise inoperable motor vehicles on the property and by maintaining a collection of materials and equipment associated with the day-to-day operation of his businesses.
 {¶ 6} In October 2003, Davisson filed for bankruptcy and the trial court placed the case on inactive status pending his bankruptcy action. The case resumed active status in March 2004.
 {¶ 7} In April 2004, the Trustees and Davisson stipulated to an Agreed Journal Entry, in which they agreed that Davisson violated the CUP and zoning resolution, and enjoined him "from conducting additional businesses from [the] property, specifically Wolverine Trucking and Equipment, LLC, Cheetah Express and Gopher Employee Leasing, unless specifically incidental to the excavation business." (Agreed Journal Entry, p. 1). Additionally, Davisson agreed to increase screening to hide the fuel tanks on the property, to screen material and *Page 5 
debris on the property by planting eight-foot evergreen trees every fifteen feet along the material, to remove the remaining junk motor vehicles from the property, and to refrain from returning trailers used for his business to the property. Davisson had forty-five days to comply with the entry.
 {¶ 8} In July 2004, the Trustees filed a motion for contempt against Davisson, alleging that he violated the April 2004 entry by continuing to operate additional businesses from the property that were not primarily related to his excavation business, by failing to completely screen the areas of the property that could be seen by surrounding property owners, and by continuing to store unlicensed trailers on the property.
 {¶ 9} In August 2004, the trial court held a hearing on the Trustees' motion for contempt and found that Davisson was not in contempt of the April 2004 entry.
 {¶ 10} In July 2005, Treacle Creek, owned by Davisson's parents, purchased the property at a sheriff's sale following foreclosure proceedings and allowed Davisson to remain living on, and to continue operating his businesses from, the property.
 {¶ 11} In March 2006, the Trustees sought a declaratory judgment and injunction against Appellants, alleging that they continued to operate businesses in violation of the zoning resolution and the CUP; that Davisson was in violation of *Page 6 
the April 2004 entry by permitting others to operate additional businesses on the property; that the CUP had expired and was revoked; and, that all business operations must cease.
 {¶ 12} In May 2006, the Trustees filed a separate motion for contempt against Davisson, individually, alleging that he violated the CUP by continuing to operate additional businesses from the property, by continuing to operate businesses after the CUP had expired, and by failing to increase screening to hide the fuel tanks, material, and debris on the property from the surrounding property owners.
 {¶ 13} In August 2006, the trial court held hearings on the Trustees' March 2006 motion for a declaratory judgment and injunction and May 2006 motion for contempt, where the following testimony was presented.
 {¶ 14} David Leitch, the former zoning inspector for Millcreek Township, testified that the area where the property is located is zoned as a U-1 rural agricultural district; that permitted uses of property in U-1 districts include single family residential, agriculture, animal hospital, clinic, kennel, public use, quasi-public use, and home occupation; that conditional uses of property in U-1 districts include public service facility, service business, signs and advertising structures, and manufactured home parks; that Davisson's renewal of the CUP was granted under the same conditions as before, which included the five-year duration *Page 7 
condition; that when the renewed CUP expired in 2005, Davisson did not seek a renewal and did not contact either Leitch or the BZA about a renewal; that Appellants are not permitted to operate any businesses from the property because they do not have a valid CUP; and, that he issued a notice revoking the CUP to Appellants in September 2005, which provided that the CUP "was due for renewal in February of this year and was not renewed. Therefore, all associated parties are hereby notified that you/they do not have a valid CUP and all must immediately cease any and all business operations." (Ex. 1, p. 1).
 {¶ 15} Leitch continued that he had observed the property many times; that he saw equipment coming and going from the property; that some form of business was being operated from the property, but he did not know the name of it; that he observed numerous semi-trucks going to and from the property, but did not see any excavation related equipment; that, in December 2005, he observed Davisson spreading chicken manure and observed two tractors with manure spreaders attached, an excavator, and a semi-truck with a trailer driving onto the property; that excavation involves digging up old foundations and holes, installing tile, and building sewer systems; and, that spreading and hauling manure is not related to excavating.
 {¶ 16} Leitch also testified that Appellants applied for a new CUP in April 2006 to operate the Site N Pipe, Inc., Pay Dirt Hauling Co., and Top Job *Page 8 
Equipment businesses as successors in interest to Davisson and Badger Excavating; that he called Davisson and informed him that all violations had to be eliminated before the BZA would consider the application for a new CUP; that the BZA rejected the application because it was incomplete; that Appellants stated on the application that the nature of the business for which they were seeking a new CUP was the "grant of heavy equipment and truck storage, repair, and dispatching and record keeping and operation of predecessor (Badger) for these purposes as defined by the [BZA] in 1994"; and, that Appellants stated on the application that the nature of the business had changed, but the nature of the use had not, and that the frequency of the conditional use had "declined from times of prior orders in 1994 2000." (Ex. 8, p. 1).
 {¶ 17} On cross-examination, Leitch admitted that he did not know how much business Appellants were conducting from the property; that excavating trucks could be kept at another location; that he did not know whether the businesses Appellants were conducting were incidental to excavation, but he did not think they were; that the zoning resolution does not specifically state that the Trustees or the BZA can limit the duration of a CUP; but, that section 1018 of the zoning resolution gives the BZA the authority to grant conditional uses "with such conditions and safeguards as are appropriate" under the resolution. (Injunction Hearing Tr., p. 23). *Page 9 
 {¶ 18} On redirect examination, Leitch testified that he had several conversations with Davisson and others regarding the nature of the use of the property; that, prior to 2004 Davisson was doing all excavating, but since 2004 the nature of the business had changed; and, that Davisson indicated that the tanker trailers going to and from the property were used for his excavating business five percent of the time and ninety-five percent of the time for hauling manure or lime. Additionally, Leitch stated that Davisson was engaged in hauling and spreading manure, repairing trucks used on the highway, and hauling materials for other people or leasing his equipment to others to use for hauling.
 {¶ 19} Jason Comstock, who lives three houses down from the property, testified that he observed plastic pipes, pieces of steel, a bulldozer, heavy machinery, different types of semi-trailers, tanker trailers, and construction equipment on the property consistently over the past two years. Comstock stated that Pay Dirt Hauling was a for-hire trucking business and was not related to excavating; that Site N Pipe was an excavation business; that he was aware of Top Job, but did not know what its purpose was; that he observed trucks hauling steel beams, scrap metal, and large pieces of wood to and from the property and did not think it was related to excavation; and, that he observed equipment that could be used for excavation on the property, but did not see it come and go. *Page 10 
 {¶ 20} On cross-examination, Comstock admitted that he did not know for whom Pay Dirt Hauling hauled material and that he did not know what some of the equipment on the property was being used for.
 {¶ 21} Forrest Day, who lives next to the property, testified that he observed tanker trucks, loaders, bulldozers, manure tippers and spreaders, and semi trucks with trailers hauling boxes of cultured stone, large wooden pallets, bags of mulch, concrete prefab walls, and steel beams going to and from the property. Day stated that he did not believe the business activities conducted on the property over the past couple of years were related to excavation.
 {¶ 22} On cross-examination, Day admitted that he and other neighbors were unhappy with all of the business activity occurring on the property; that he knew an excavation business had been operated from the property for years; that sometimes subcontractors put down seed and mulch as part of excavating; that he did not know whether Appellants' excavating business engaged in site restoration, seeding, or mulching; that some of the semis could be used for hauling excavation equipment; but, that Davisson recounted during a BZA meeting in December 2004 that excavation was not a large percentage of his business.
 {¶ 23} Phillip Sutton, who lives across from the property, testified that he was a friend of Davisson's and talked frequently with Davisson regarding the activities on the property; that approximately one month before the hearings, *Page 11 
Davisson told him that he was doing a little excavating, but also some agricultural activity and manure hauling; that he assumed Davisson was primarily conducting agricultural and manure hauling activities from the property based on their conversations; and, that he operates his own excavating business and does not consider hauling manure to be related to excavating.
 {¶ 24} On cross-examination, Sutton admitted that Davisson indicated that he was still doing some excavating from the property and did not state what percentage of his business was excavating.
 {¶ 25} Davisson testified that he is employed by Site N Pipe, Inc., an excavation business engaged in digging dirt and laying pipe; that he no longer operated Wolverine Trucking, Cheetah Express, and Gopher Employee Leasing; that he operated the Pay Dirt Hauling and Top Job companies from the property; that Top Job is an equipment leasing company; that Pay Dirt Hauling and Top Job are incidental to the excavation business because they work only for Site N Pipe; and, that he seldom uses equipment for hauling material that is unrelated to the excavation business.
 {¶ 26} On cross-examination, Davisson admitted that he no longer owns the property; that Wolverine Trucking was also an equipment leasing company and was barred by the April 2004 entry; that Top Job is an equipment leasing company, but it only leases to Site N Pipe; and, that he hauls and spreads manure *Page 12 
for profit, but that it is incidental to excavation because he uses the same machines and the same excavator.
 {¶ 27} On redirect examination, Davisson testified that excavation is still the primary business of Site N Pipe; that, when he operated Wolverine Trucking, it only leased to Badger Excavating; and, that Top Job only leases to Site N Pipe and leases excavation equipment.
 {¶ 28} In September 2006, the trial court granted the Trustees' May 2006 motion for contempt against Davisson, finding that Davisson continued to operate additional businesses not specifically incidental to the excavation business in violation of the April 2004 entry and that the CUP had expired and had not been renewed. Additionally, the trial court did not hold Davisson in contempt on the issue of screening the property, finding that he had attempted to comply with the screening requirements. The trial court ordered Davisson to serve thirty days in jail, but provided he could purge himself of the contempt order if he removed all "tools, vehicles, materials, inventory and debris obtained as a result of the business activities conducted" from the property. (Contempt Journal Entry, p. 4).
 {¶ 29} The trial court also granted the Trustees' March 2006 motion for a declaratory judgment and injunction, finding that Davisson admitted that he continued to operate businesses on the property; that the CUP had expired by lapse of time; and, "that in any event [Davisson] is presently continuing to operate *Page 13 
businesses not specifically incidental to the excavation business, in contravention of the [zoning resolution], from and on the [property] ." (Injunction Journal Entry, p. 3). The trial court issued an injunction enjoining Appellants from operating "any business or businesses in contravention of the Millcreek Township Zoning Resolution. Specifically, no use of the land situated as 12140 Watkins Road, Marysville, Ohio, 43040, for a purpose not in compliance with U-1 Rural zoning, without either a rezoning by Millcreek Township or issuance of a new [CUP] by Millcreek Township, is hereby enjoined."[1] (Injunction Journal Entry, pp. 3-4).
 {¶ 30} It is from these judgments that Davisson and Appellants appeal. In case number 14-06-49, Davisson, individually, appeals the trial court's granting of the Trustees' May 2006 motion for contempt. In case number 14-06-50, Appellants appeal the trial court's granting of the Trustees' March 2006 motion for a declaratory judgment and injunction.
 I. Case Number 14-06-50 {¶ 31} For clarity of analysis, we elect to address case number 14-06-50 first, in which Appellants present the following assignment of error for our review.
 THE TRIAL COURT'S JOURNAL ENTRY GRANTING THE BOARD'S INJUNCTION IS CONTRARY TO OHIO LAW BECAUSE THERE IS NO STATUTORY AUTHORITY OR *Page 14 AUTHORITY UNDER BOARD ZONING RESOLUTION (SIC) THAT REQUIRED MR. DAVISSON TO RENEW HIS CONDITIONAL USE PERMIT, AND THEREFORE IT DID NOT EXPIRE AND COULD NOT BE REVOKED BY THE BOARD.
 {¶ 32} In their sole assignment of error, Appellants contend that the trial court's granting of the injunction was contrary to law because the BZA had no authority to include the five-year duration on the initial CUP given the zoning resolution does not explicitly provide for such a condition. Additionally, Appellants contend that neither the Revised Code nor the zoning resolution required Davisson to renew the CUP or gave the BZA authority to revoke it.[2]
 {¶ 33} An injunction provides equitable relief under extraordinary circumstances where no adequate remedy at law exists. Haig v. Ohio StateBd. of Edn. (1992), 62 Ohio St.3d 507, 510; Garono v. State (1988),37 Ohio St.3d 171, 173. An injunction "is not available as a right but may be granted by a court if it is necessary to prevent a future wrong that the law cannot." Garono, 37 Ohio St.3d at 173. The decision whether to grant injunctive relief is within the sound discretion of the trial court. Baker v. Adams, 3d Dist. No. 8-05-17, 2006-Ohio-3232, ¶ 26, citing Perkins v. Quaker City (1956), 165 Ohio St. 120, 125. Thus, a *Page 15 
reviewing court will not disturb the trial court's decision to grant an injunction absent an abuse of discretion. Id. An abuse of discretion "connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable."Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219. When applying the abuse of discretion standard, a reviewing court may not simply substitute its judgment for that of the trial court. Id.
 {¶ 34} In the case sub judice, Appellants argue that the zoning resolution did not authorize the BZA to impose a duration limit when granting the CUP; that the BZA had no authority to revoke the CUP; and, therefore, that the trial court erred in issuing the injunction. A close review of the zoning resolution indicates that it does not explicitly authorize the BZA to impose duration limits on a CUP. However, the zoning resolution does mandate that, in deciding whether to grant a CUP, the BZA "shall * * * grant conditional uses with such conditions and safeguards as are appropriate under this resolution, or deny conditional uses when not in harmony with the purpose and intent of this resolution." (Zoning Resolution, § 1018). Although this provision can be interpreted as a "catch-all" provision authorizing the BZA to impose any conditions, including a duration limit, the phrase "as are appropriate under this resolution" and the reference to the purpose and intent of the zoning resolution supports a more narrow interpretation. For instance, the provisions of the zoning resolution specific to conditional uses *Page 16 
require that any conditional use must be "in harmony" with the orderly development of the district with respect to the location, size, nature, and intensity of the conditional use. (Zoning Resolution, § 504). Additionally, before granting a CUP, the BZA must ensure that satisfactory arrangements have been made, where applicable, regarding ingress and egress to property, off-street parking and loading areas, refuse and service areas, utilities, screening and buffering, signs and exterior lighting, required yards and open space, and general compatibility with adjacent properties and other property in the district. (Zoning Resolution, § 1018(5)(a)-(h)). Accordingly, the authorization contained in § 1018 limits the BZA to imposing safeguards and conditions necessary to conform to the requirements in §§ 504 and 1018(5), neither of which mentions time limitations.
 {¶ 35} This interpretation of the zoning resolution is bolstered by the fact that the zoning resolution fails to provide a renewal process for a CUP. Indeed, the only provision referencing termination of a CUP is § 502, which provides that a CUP "shall be deemed to authorize only one particular conditional use and shall expire if the conditional use shall cease for more than one year for any reason." (Zoning Resolution, § 502). It is difficult to imagine how the BZA can impose a time limitation and renewal of a CUP without giving any guidance on renewal in the zoning resolution. Likewise, the zoning resolution also fails to provide either the possibility of revocation or a revocation process in the event any term of a *Page 17 
CUP, including a failure to renew, is violated. Where a zoning resolution is silent regarding violations of a CUP, R.C. 519.14(D) provides the sole authority to revoke a CUP. SCA Services of Ohio, Inc.v. Ream, Canton Tp. Zoning Inspector (1985), 5th Dist. No. CA 6599,1985 WL 6480. Under R.C. 519.14, which defines the powers of township boards of zoning appeals, a BZA is only authorized to revoke a previous CUP "granted for the extraction of minerals, if any condition of the * * * [permit] is violated." R.C. 519.14(D). Clearly, R.C. 519.14(D) does not apply in this case given the conditional use did not involve mineral extraction. Thus, we find that the trial court abused its discretion in enjoining Appellants from operating the excavation business because the BZA had no authority to impose the five-year time limitation on the 1994 CUP and had no authority under the zoning resolution to revoke the CUP due to an expiration of an arbitrary time limit. However, we uphold the trial court's injunction ordering Appellants to cease operating any additional businesses from the property.
 {¶ 36} Accordingly, we sustain Appellants' assignment of error insofar as the trial court's order enjoining Appellants from operating the excavation business was an abuse of discretion.
 II. Case Number 14-06-49 {¶ 37} We now address case number 14-06-49, in which Davisson presents the following assignments of error for our review. *Page 18 
 Assignment of Error No. I THE TRIAL COURT'S JOURNAL ENTRY IS NOT SUPPORTED BY THE MANIFEST WEIGHT OF THE EVIDENCE BECAUSE THE BOARD FAILED TO PROVE, BY CLEAR AND CONVINCING EVIDENCE, THAT THE BUSINESSES OPERATED BY MR. DAVISSON FROM THE PROPERTY WERE NOT SPECIFICALLY INCIDENTAL TO THE EXCAVATION BUSINESS. Assignment of Error No. II THE TRIAL COURT ABUSED ITS DISCRETION IN FINDING MR. DAVISSON IN CONTEMPT BECAUSE THERE WAS NO PROBATIVE EVIDENCE BEFORE THE TRIAL COURT FOR IT TO ISSUE SUCH A FINDING.
 {¶ 38} Due to the nature of Davisson's assignments of error, we elect to address them together.
 Assignments of Error Nos. I II {¶ 39} In his first assignment of error, Davisson contends that the trial court's finding of contempt is against the manifest weight of the evidence because the BZA failed to prove by clear and convincing evidence that the businesses he operated from the property were not incidental to the excavation business. In his second assignment of error, Davisson contends that the trial court abused its discretion by finding him in contempt. Specifically, Davisson asserts that the witnesses who testified at the contempt hearing had no personal knowledge of any violation of the 2004 entry. We disagree. *Page 19 
 {¶ 40} Civil contempt occurs when an individual fails to comply with a court order in a civil action that will benefit the opposing party,Pedone v. Pedone (1983), 11 Ohio App.3d 164, 165, thereby acting to bring the "administration of justice into disrespect, or * * * to embarrass, impede or obstruct a court in the performance of its functions." Windham Bank v. Tomaszcyzk (1971), 27 Ohio St.2d 55, paragraph one of the syllabus. It is irrelevant that the transgressing party does not intend to violate the court order. If the dictates of the judicial decree are not followed, a contempt citation will result.Pugh v. Pugh (1984), 15 Ohio St.3d 136, 140, citing Pedone,11 Ohio App.3d at 164.
 {¶ 41} "A finding of civil contempt requires clear and convincing evidence that the alleged contemnor has failed to comply with the court's prior orders." Moraine v. Steger Motors, Inc. (1996),111 Ohio App.3d 265, 268, citing ConTex, Inc. v. Consolidated Technologies,Inc. (1998), 40 Ohio App.3d 94. The movant bears the burden of proving that the other party violated the court order. Carroll v. Detty (1996),113 Ohio App.3d 708, 711. "`Clear and convincing evidence' has been defined as`that measure or degree of proof which is more than a mere preponderance of the evidence, but not to the extent of such certainty as is required beyond a reasonable doubt in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be *Page 20 
established."' Ohio State Bar Assn. v. Reid, 85 Ohio St.3d 327, 331,1999-Ohio-374 (citations omitted).
 {¶ 42} When reviewing a trial court's finding of contempt, appellate courts apply the abuse of discretion standard. State ex rel. Ventrone v.Birkel (1981), 65 Ohio St.2d 10, 11; Kaufman v. Kaufman, 3d Dist. No. 2-05-24, 2006-Ohio-603, ¶ 17. An abuse of discretion "connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable." Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 219. When applying this standard, a reviewing court may not simply substitute its judgment for that of the trial court. Id. Additionally, a trial court judgment that is supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence. Fry v. Fry (1989), 64 Ohio App.3d 519,524, citing CE. Morris Co. v. Foley Constr. Co. (1978),54 Ohio St.2d 279.
 {¶ 43} Here, a review of the record indicates that competent, credible evidence was presented to clearly and convincingly establish that Davisson violated the trial court's April 2004 entry regarding the operation of additional businesses on the property.[3] A review of the evidence indicates that numerous *Page 21 
witnesses testified that they observed various trucks, trailers, and equipment hauling material unrelated to excavation going to and from the property; that Davisson gave the impression in conversations with his neighbors and the zoning inspector that excavation was no longer the primary business being operated from the property; that Davisson himself admitted that he was conducting a manure hauling business and an equipment leasing business from the property; that Appellants provided in their 2006 application for a new CUP that they sought to use the property for heavy equipment and truck storage, repair, and dispatching, as well as record keeping and operation of Davisson's prior excavation business; that the nature of the business had changed, but the nature of the use had not; and, that the frequency of the original conditional use had declined since 1994 and 2000.
 {¶ 44} Although Davisson explained that he used his excavation equipment in his manure hauling business, we fail to see how using excavation equipment to perform manure hauling transforms the manure hauling business into a business incidental to excavation. Likewise, the fact that Davisson's hauling and equipment leasing businesses allegedly serve only his excavation business does not make those businesses incidental to or related to his excavation business. This is particularly so given Davisson's prior equipment leasing business, Wolverine *Page 22 
Trucking, only leased to his former excavation business, Badger Excavation, but, nonetheless, the 2004 entry barred Davisson from operating Wolverine Trucking because it was not incidental to excavation. Thus, we find that the trial court did not abuse its discretion by finding Davisson in contempt regarding his operation of additional businesses not incidental to the excavation business and that the trial court's finding of contempt was not against the manifest weight of the evidence.
 {¶ 45} However, based upon our findings that the BZA was not authorized to either impose the five-year time limitation or revoke the CUP and that the CUP is still valid, we find that the trial court abused its discretion in that portion of its order finding Davisson to be in contempt for continuing to operate the excavation business on the property after the expiration of the CUP.
 {¶ 46} Accordingly, we overrule both of Davisson's assignments of error regarding the trial court's finding of contempt for operating additional businesses not incidental to the excavation business, but sustain his assignments of error regarding the trial court's finding of contempt on the expiration issue.
 {¶ 47} In case number 14-06-50, having found no error prejudicial to the appellants herein regarding the trial court's order enjoining them from operating additional businesses not related to excavation from the property, but having found error prejudicial to the appellants regarding the trial court's order enjoining them *Page 23 
from the excavation business because the conditional use permit had expired, we affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.
 {¶ 48} In case number 14-06-49, having found no error prejudicial to Davisson herein regarding the trial court's finding of contempt for operating additional businesses not related to excavation from the property, but having found error prejudicial to Davisson regarding the trial court's finding of contempt for operating the excavating business because the conditional use permit had expired, we affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.
Judgments affirmed in part, reversed in part, and causesremanded.
PRESTON, J., concurs.
[1] We note that the second sentence of the September 2006 injunction providing that "[s] pecifically no use of the land * * * for a purpose not in compliance * * * is hereby enjoined" is currently worded in such a way as to not enjoin anything. Presumably, the trial court intended it to read "specifically any use of the land * * * for a purpose not in compliance * * * is hereby enjoined," and the use of "no" instead of "any" was merely a typographical error. In that case, the trial court should issue a nunc pro tunc entry to correct the clerical mistake.
[2] We note that, although Treacle Creek did not purchase the property until July 2005, it is properly part of this action because zoning regulates the land itself and its use, not the person who owns or operates the property by whom such use is to be exercised. Fox v.Shriver-Allison Co. (1971), 28 Ohio App.2d 175; Set Products, Inc. v.Bainbridge Tp. Bd. of Zoning Appeals (1987), 31 Ohio St.3d 260, 263
(once granted, variances and conditional uses run with the land);State ex rel Parker v. Konopka (1963), 119 Ohio App. 513 (zoning ordinances or regulations reference land use rather than the persons who own the land; thus, variances run with the land).
[3] Although the dissent interprets the Agreed Journal Entry as only enjoining the operation of Wolverine Trucking and Equipment, LLC., Cheetah Express, and Gopher Employee Leasing, we interpret the phrase "is hereby enjoined from conducting additional businesses from his property, specifically Wolverine Trucking, LLC., Cheetah Express and Gopher Employee Leasing, unless specifically incidental to the excavation business" as enjoining operation of any additional business that are not specifically incidental to the excavation business,including the particular businesses listed. We believe this is the correct interpretation given the parties also operated under this interpretation, as evidenced by the fact that Davisson's testimony and arguments addressed only whether the additional businesses were incidental to excavation and not the argument raised by the dissent.