**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Columbus Bar Assn. v. Bahan,* **Slip Opinion No. 2020-Ohio-434.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2020-OHIO-434

COLUMBUS BAR ASSOCIATION *v.* BAHAN.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Columbus Bar Assn. v. Bahan,* Slip Opinion No. 2020-Ohio-434.]**

*Attorneys at law—Misconduct—Violation of the Rules of Professional Conduct— Solicitation of professional employment by in-person contact when a primary motive is pecuniary gain—Public reprimand.*

(No. 2019-0219—Submitted September 11, 2019—Decided February 12, 2020.)

ON CERTIFIED REPORT by the Board of Professional Conduct of the Supreme Court, No. 2018-030.

_____

STEWART, J.

{¶ 1} Respondent, Natalie Jonnelle Bahan, of West Mansfield, Ohio, Attorney Registration No. 0079304, was admitted to the practice of law in Ohio in 2005. She has not previously been disciplined by this court.

{¶ 2} In a complaint certified to the Board of Professional Conduct on June 6, 2018, relator, Columbus Bar Association, charged Bahan with multiple ethical

violations relating to her visit to Rosalie Kennedy, who had been arrested and was incarcerated for the murder of her husband. Kennedy did not ask for the visit, nor did anyone ask for it on her behalf. Relator accused Bahan of violating Prof.Cond.R. 7.3(a) (a lawyer shall not, by in-person, live-telephone, or real-time electronic contact, solicit professional employment when a significant motive for the lawyer's doing so is the lawyer's pecuniary gain), 8.4(d) (prohibiting conduct prejudicial to the administration of justice), and 8.4(h) (prohibiting conduct that adversely reflects on a lawyer's fitness to practice law). The parties stipulated to the facts of the case but disagreed whether misconduct had occurred. A three-member panel of the board conducted a hearing on the matter. At the hearing, Bahan asserted that her primary motivation for visiting Kennedy in jail was to be sure that Kennedy knew her rights. She also asserted that she wanted to gain the trial experience that would come from working on Kennedy's case and that she did not anticipate pecuniary gain. The panel found, and the board agreed, that there is insufficient evidence that Bahan violated Prof.Cond.R. 8.4(d) and (h) and recommends that we dismiss those charges. However, the panel and the board found that Bahan violated Prof.Cond.R. 7.3(a). The board recommends that we impose a fully stayed six-month suspension. Bahan objects to the board's finding that she violated Prof.Cond.R. 7.3(a) and requests that the complaint be dismissed. She argues in the alternative that even if she did violate the rule, a public reprimand, rather than a stayed suspension, is warranted in her case.

{¶ 3} We adopt the board's findings of fact, its recommended dismissals, and its finding of misconduct. However, because this is a single instance of misconduct involving a single client, and because Bahan has no prior disciplinary violations, we find that a public reprimand is the appropriate sanction in this case. Accordingly, we publicly reprimand Bahan for violating Prof.Cond.R. 7.3(a), and we order her to pay the costs of these proceedings and to refrain from future misconduct.

**Misconduct**

{¶ 4} Bahan was admitted to the practice of law in Ohio in 2005 and has never been the subject of disciplinary proceedings in this court. She is a solo practitioner and primarily practices criminal defense, juvenile law, and probate law.

{¶ 5} On March 10, 2017, Kennedy was arrested for the murder of her husband and taken to the Logan County jail. Bahan did not know Kennedy but became interested in the case after learning of the arrest and seeing Kennedy's picture on the Internet. Bahan thought that perhaps Kennedy had been a victim of domestic violence and that the entire incident had arisen because Kennedy was trying to protect herself. Bahan contacted attorney Marc Triplett to ask him what he thought about her visiting Kennedy in jail. Triplett is an experienced criminal-defense lawyer who is certified to be court-appointed counsel in murder cases. Bahan had worked with Triplett as co-counsel in previous felony cases. Triplett advised Bahan that he did not see any problem with visiting Kennedy for the purpose of assuring that Kennedy's rights were protected.

{¶ 6} Bahan visited Kennedy at the jail the day after Kennedy's arrest. Bahan advised Kennedy not to give any statements to the police. She also advised Kennedy that she needed an attorney and that Kennedy needed to consider whether she could afford to retain private counsel. She also explained how Logan County appoints counsel for defendants who cannot afford private counsel. Kennedy told Bahan she was considering hiring Triplett to represent her and asked Bahan to contact Triplett. At a second visit with Kennedy, Bahan brought a proposed fee agreement listing only her name as counsel and also discussed legal strategy with Kennedy. Kennedy was then indicted for murder; her arraignment was scheduled for March 17. Bahan met Kennedy's daughters and examined the crime scene. At that meeting, Bahan discussed her legal fees and requested a down payment. She also asked Kennedy's daughters whether they had access to Kennedy's bank accounts and credit cards and discussed the possibility of selling assets and

livestock, but the parties agree that Bahan asked these questions in part to determine whether Kennedy was eligible for court-appointed counsel.

{¶ 7} When Bahan contacted Triplett as Kennedy had requested, Triplett told Bahan that he could not represent Kennedy. Nonetheless, Bahan filed a notice of appearance in Kennedy's case as well as a request for a bill of particulars, a motion to preserve evidence, and a demand for discovery. Bahan also visited Kennedy at the jail a final time and there learned that Kennedy knew that Triplett could not represent her. Kennedy told Bahan that she had retained other counsel. Bahan contacted Kennedy's new counsel to confirm that Kennedy would have representation at her arraignment and withdrew from Kennedy's case. In a text to the daughters, Bahan indicated that she hoped she would be paid for the work she had performed on Kennedy's behalf. On April 14, Bahan sent Kennedy an itemized bill in the amount of $1,400; this amount included charges of $300 for the first jail visit and $400 for the second jail visit. Kennedy did not pay the bill, and Bahan did not pursue Kennedy for payment.

{¶ 8} The board adopted the panel's finding that Bahan's motivation in visiting Kennedy was pecuniary gain and the panel's conclusion that she violated Prof.Cond.R. 7.3(a). Bahan objects to the board's conclusion. She asserts that empathy and compassion, not pecuniary gain, were the initial motivation for her unsolicited visit to Kennedy on March 11. She argues that the letter submitted to the panel by Triplett contains evidence that she was not motivated by pecuniary gain. She points to unrebutted testimony that after Kennedy told Bahan that she would not be hiring her, Kennedy thanked her for her assistance and asked that she send a bill for her time. In addition, she points out that the grievance in this matter was not filed by Kennedy or Kennedy's counsel. She admits that she wanted to work on Kennedy's case with Triplett in order to gain the experience necessary to become certified for court appointments in murder cases and asserts that because

4

her motivation was to gain experience and improve her trial skills, she did not violate Prof.Cond.R. 7.3(a).

{¶ 9} Prof.Cond.R. 7.3(a) provides:

> A lawyer shall not by in-person, live telephone, or real-time electronic contact solicit professional employment when a significant motive for the lawyer's doing so is the lawyer's pecuniary gain, unless either of the following applies:
> (1) the person contacted is a lawyer;
> (2) the person contacted has a family, close personal, or prior professional relationship with the lawyer.

{¶ 10} The United States Supreme Court has explained that the objective of the rule is to prevent harmful attorney solicitation. *Ohralik v. Ohio State Bar Assn.*, 436 U.S. 447, 464, 98 S.Ct. 1912, 56 L.Ed.2d 444 (1978)[1] (affirming this court's decision that an attorney's unsolicited legal advice to accident victims and acceptance of employment as a result of that unsolicited legal advice constituted a violation of DR 2-104(A), a predecessor to Prof.Cond.R. 7.3(a)); *see also* Official Comment, Prof.Cond.R. 7.3(a). Because attorneys are trained to be persuasive, there is a heightened potential for overreach and undue influence in an attorney's in-person solicitation. *Id*. at 465. This is particularly true when the person is under adverse circumstances. *Id*. When in-person overtures are made to a person under adverse circumstances, the attorney may further distress the person and may invade his or her privacy. *Id*. Because of the high potential for abuse, and because reliable proof of in-person solicitation is difficult to obtain, proof of harm to the potential

---

1. Although Prof.Cond.R. 7.3(a) was promulgated in 2007, it embraced the provisions of former DR 2-104(A), among other rules, with some modifications. *Comparison to former Ohio Code of Professional Responsibility*, 110 Ohio St.3d CCLVI. The Supreme Court's analysis in *Ohralik* with regard to the harmful nature of attorney solicitation thus remains applicable in this case.

client was not required to sustain a violation of the rule. *Id*. at 468. The former rule did not prohibit an attorney from providing in-person unsolicited legal advice or apprising an individual in distress about his or her rights, but it did proscribe using in-person unsolicited advice in order to obtain employment for a fee. *Id*. at 459. The same is true of the current rule. Prof.Cond.R. 7.3(a) proscribes an attorney from providing unsolicited in-person legal advice in order to obtain employment for a fee unless an exception applies.

{¶ 11} Accordingly, we agree with the board's conclusion that Bahan violated Prof.Cond.R. 7.3(a). Although Bahan claims that gaining trial experience and improving her trial skills were the motivating factors for contacting Kennedy, because Bahan expressed her desire to be compensated for the time she had spent on the case and sent a bill for her services, she nonetheless committed a violation. Prof.Cond.R. 7.3(a) is violated when an attorney attempts to represent a person for a fee, that person is not an attorney and is unknown to the attorney, and the representation arises from in-person and unsolicited legal advice. We also disagree with Bahan that Triplett's letter provides evidence that she did not violate Prof.Cond.R. 7.3(a). The letter sets forth Triplett's belief that Bahan's contact with Kennedy was motivated by a desire to provide comfort and information to Kennedy and that Bahan's contact did not seem to be motivated by pecuniary gain. However, Triplett's letter is silent on whether the two attorneys discussed Bahan's ethical responsibility to refrain from accepting employment for a fee in Kennedy's case following her unsolicited visit to Kennedy. Bahan testified that it was only after Kennedy mentioned hiring Triplett that she became interested in being co-counsel in the case. But Bahan's deposition testimony demonstrates that *before* her first visit to Kennedy at the jail she spoke to Triplett about being appointed as Kennedy's counsel and that she was willing to risk the possibility that she would not get paid for her first visit.

> And he said, you know, "Well, what if we just did it and we didn't care? Like, what"—"just, you know, if you just go and let the chips fall where they may. So what if you don't get paid? But at least whoever does get her as a client * * * then they'll have a fighting chance." * * *

> Both of us discussed the fact that we both knew, like, if you do—if she did get court-appointed counsel, any work you do prior to appointment, you can't bill for.

{¶ 12} Bahan's assertions that she sent Kennedy a bill only at Kennedy's request, that she did not attempt to collect any payment of that bill, and that the grievance in this matter was not filed by Kennedy demonstrate that Bahan either misunderstands the rule or that she lost sight of her ethical duty. Prof.Cond.R. 7.3(a) places an ethical duty on attorneys to refrain from in-person solicitation under certain circumstances. It is a preventative rule, and a violation of the rule does not turn on whether the prospective client was harmed. *Ohralik*, 436 U.S. at 463, 98 S.Ct. 1912, 56 L.Ed.2d 444. Rather, a violation of the rule turns on the attorney's conduct. *Id.*

{¶ 13} We adopt the board's finding that Bahan violated Prof.Cond.R. 7.3(a) and, in accord with the board's recommendation, we dismiss the remaining alleged rule violations.

## Sanction

{¶ 14} When deciding upon the appropriate sanction to impose for attorney misconduct, we consider the ethical duties violated, the actual injury caused, the aggravating and mitigating factors listed in Gov.Bar R. V(13), and the sanctions imposed in similar cases.

{¶ 15} The board found as aggravating factors that Bahan demonstrated a selfish motive in that her actions were clearly spurred by her self-interest and that

she refused to acknowledge the wrongfulness of her conduct. Gov.Bar R. V(13)(B)(2) and (7).

{¶ 16} The board found that the following four factors mitigate Bahan's conduct: Bahan has no prior disciplinary record, Bahan cooperated with the investigation and grievance process, Bahan demonstrated proof of good character and reputation, and there was no financial harm to any party. Gov.Bar R. V(13)(C)(1), (4), and (5).

{¶ 17} The board recommends that we impose a six-month stayed suspension but found that had Bahan acknowledged the wrongfulness of her conduct, a public reprimand would have been an appropriate sanction in this case.

{¶ 18} In her second objection, Bahan asserts that if a violation of Prof.Cond.R. 7.3(a) is found, because of the mitigating factors in her case, a public reprimand is the appropriate sanction.

{¶ 19} The appropriate sanction for a single violation of Prof.Cond.R. 7.3(a) is a matter of first impression for this court. The board recommends a six-month stayed suspension. The parties cited several cases in support of their proposed sanctions, and the board relied on additional cases, but we find the following four cases to be most instructive: *Columbus Bar Assn. v. Willette*, 117 Ohio St.3d 433, 2008-Ohio-1198, 884 N.E.2d 581; *Lorain Cty. Bar Assn. v. Williamson*, 150 Ohio St.3d 382, 2017-Ohio-6963, 81 N.E.3d 1254; *Disciplinary Counsel v. Mason*, 125 Ohio St.3d 29, 2010-Ohio-1467, 925 N.E.2d 963; and *Ohio State Bar Assn. v. Reid*, 85 Ohio St.3d 327, 708 N.E.2d 193 (1999).

{¶ 20} In *Willette*, we imposed a one-year suspension with six months stayed on an attorney for multiple rule violations, including a violation of former DR 2-101(F)(1), which prohibited solicitation of legal business in person or by telephone. *Willette* at ¶ 29. Philip Willette hired an out-of-state firm to market and sell living trusts and other estate-planning services. *Id*. at ¶ 3. The marketing used by the firm was misleading and false and contained unverifiable statements. *Id*. at

¶ 23. Willette failed to disclose his relationship with the estate-planning firm or their fee-sharing agreement to his clients and failed to disclose that the out-of-state firm's primary objective was to sell insurance. *Id*. at ¶ 18, 20, 21. As a result of Willette's misconduct, his clients were forced to hire and pay another attorney to investigate the legality of the trust prepared by Willette. *Id*. at 43. Mitigating factors included an absence of prior misconduct and that Willette was cooperative during the investigation and made restitution. *Id*. at ¶ 11. Aggravating factors included multiple rule violations, Willette's refusal to acknowledge the wrongful nature of his conduct, his concealing of material information from his clients, and his attempt to return a portion of their fee in exchange for a release from liability. *Id*. at ¶ 10.

{¶ 21} In *Williamson*, we publicly reprimanded Anisa Asha Muriell Williamson for violations of Prof.Cond.R. 7.1 and 7.3(c)(1) and (d). Prof.Cond.R. 7.1 prohibits attorneys from making false, misleading, or deceptive statements in their advertising material. Williamson sent a letter to a prospective client that included a false claim that a notice of lis pendens had been filed regarding the prospective client's home. *Williamson* at ¶ 3-4. In addition to the false factual claim, the letter included material misrepresentations of the law made in order to market her law firm. *Id*. at ¶ 3, 5. Although the letter included the words "Advertising Material," the prospective client did not realize that the letter was an advertisement. *Id*. at ¶ 4. There were no aggravating factors, but the mitigating factors included that Williamson had no prior discipline or dishonest motive, that she was cooperative and made full disclosures, and that she showed remorse for the misconduct. *Id*. at ¶ 9.

{¶ 22} In *Mason*, we publicly reprimanded Ronald Lee Mason for a single violation of Prof.Cond.R. 7.2(b) after he paid referral fees for eight clients referred to his law practice. *Mason*, 125 Ohio St.3d 29, 2010-Ohio-1467, 925 N.E.2d 963, at ¶ 1, 5. Prof.Cond.R. 7.2(b) prohibits an attorney from giving anything of value

for a referral. The referrals were made by an employee of a consulting firm that was a wholly owned subsidiary and ancillary business of Mason's law practice. *Id.* at ¶ 2, 5. Mason stipulated to the misconduct, and the parties entered into a consent-to-discipline agreement. *Id.* at ¶ 6, 9. There were no aggravating factors. *Id.* at ¶ 7. The mitigating factors included that Mason had no prior discipline, that he provided full disclosure and displayed a cooperative attitude during the investigation, that he had made a timely good-faith effort to rectify the consequences of his misconduct, and that he was of good character. *Id.*

{¶ 23} In *Reid*, we publicly reprimanded Judge M. David Reid for violations of two judicial canons arising from his testimony before a zoning commission. The testimony was in regard to real property owned by one of the judge's partnership interests. He also testified regarding one parcel that he personally purchased. *Reid*, 85 Ohio St.3d at 333, 708 N.E.2d 193. We concluded that the judge's testimony was intended to lend the prestige of his office to advance his personal interests. *Id.*

{¶ 24} Considering the misconduct and sanctions imposed in these cases, we think a public reprimand is an appropriate sanction in Bahan's case. The board found, and we agree, that Bahan's ethical violation was a single incident involving a single prospective client and that it did not result in financial harm to Kennedy. Bahan's refusal to acknowledge the wrongfulness of her conduct is not enough, on its own, to justify an increase in sanction from a public reprimand. Bahan has had no other disciplinary matters filed against her, and she is respected as an attorney in her community. Despite Bahan's refusal to acknowledge the wrongfulness of her conduct, she stipulated to the facts of the case, she made a full disclosure to the board, and she was cooperative with the disciplinary investigation.

{¶ 25} Accordingly, we publicly reprimand Natalie Jonnelle Bahan for her violation of Prof.Cond.R. 7.3(a). We further order her to refrain from any future misconduct and to pay the costs of these proceedings.

Judgment accordingly.

FRENCH and DONNELLY, JJ., concur.

DEWINE, J., concurs in judgment only.

O'CONNOR, C.J., and KENNEDY and FISCHER, JJ., dissent and would impose a fully stayed six-month suspension, as recommended by the Board of Professional Conduct.

_____

Briscoe Law Offices, L.P.A., and Colleen Briscoe; and Kent. R. Markus, Bar Counsel, and A. Alysha Clous, Assistant Bar Counsel, for relator.

Dennis W. McNamara, for respondent.

_____