[Cite as *Oakhill Invest., L.L.C. v. Toe*, 2025-Ohio-4691.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

| | |
|---|---|
| Oakhill Investment, LLC | Court of Appeals No.  L-25-00035 |
| Appellee | Trial Court No.  CVI-24-17167 |
| v. | |
| Helena Toe, et al. | **DECISION AND JUDGMENT** |
| Appellant | Decided: October 10, 2025 |

* * * * *

Douglas A. Wilkins, for appellee.

Karin L. Coble, for appellant.

George Thomas and B. Noah Woods, for
amicus curiae, The Fair Housing Center.

* * * * *

**OSOWIK, J.**

{¶ 1} This is an appeal from a judgment by the Toledo Municipal Court, Housing

Division, which granted the motion filed in the small-claims division by plaintiff-appellee

Oak Hill Investment, LLC to disqualify attorney Rashad Z. Daoudi from representing

defendant-appellant Helena K. Toe for violating Prof.Cond.R. 7.3(a). The codefendant

Kamah D. Venn and amicus curaie The Fair Housing Center are not parties to this appeal.[1] For the reasons set forth below, this court reverses the trial court's judgment.

{¶ 2} Appellant sets forth two assignments of error:

1. The trial court abused its discretion by disqualifying Toe's counsel of choice.
2. The trial court erred as a matter of law by disqualifying Daoudi on the basis that he acted with impropriety.

### I. Background

{¶ 3} After appellant vacated a Toledo, Ohio residential unit she rented from appellee, on September 25, 2024, appellee sent appellant and Venn, the guarantor/co-signer, an itemization totaling $2,840 allegedly owed to appellee.[2] When neither appellant nor the guarantor paid within 10 days per the letter, on October 29, 2024, appellee filed a small-claims complaint against appellant and Venn, the guarantor, in Toledo Municipal Court for $2,840. Under R.C. 1925.04(B), the matter was immediately set for a trial on December 3, 2024.

{¶ 4} The events that occurred outside of the small-claims courtroom on December 3, 2024, prior to the start of the trial are the subject of appellee's motion to disqualify attorney Daoudi.

---

[1] This appeal is about the act of solicitation by attorney Daoudi and not the public policy importance of that solicitation advanced in the briefs by appellant and the amicus curiae.
[2] The itemization listed $1,680 for cleaning and repairs plus $1,410 for late fees and rent totaling $3,090. After deducting the $250 security deposit, the net total was $2,840.

2.

{¶ 5} As is common practice at Toledo Municipal Court, parties and their attorneys[3] congregate in the hallway outside of the small-claims courtroom waiting to be called in. Because settlement of small claims matters are encouraged under R.C. 1925.03, negotiations may occur while the parties wait. Appellant waited alone in the hallway, and appellee's representative waited in the hallway with two attorneys: lead attorney Michael O'Neill and attorney Douglas A. Wilkins, who signed and filed the complaint for damages and the motion that is the subject of this appeal. Before approaching appellant to discuss the case, attorney O'Neill saw attorney Daoudi in the same hallway, who was not interacting with appellant. Attorney Daoudi was representing an unrelated client in an unrelated matter that also involved appellee. When attorney O'Neill asked attorney Daoudi if he was representing appellant or Venn in this matter, he denied it and didn't seem familiar with their case.

{¶ 6} Attorney O'Neill then proceeded to discuss resolving the case with appellant in a nearby consultation room behind a closed door. At some point during that discussion attorney O'Neill opened the door and exited the room, leaving appellant inside and the door open. While attorney O'Neill discussed resolving the case in the hallway with his client, attorney Daoudi, uninvited, entered the consultation room where appellant sat and initiated a discussion with appellant.

{¶ 7} According to appellant, attorney Daoudi asked her if she had any questions about appellee's case against her. At some point during the discussion, appellant agreed

---

[3] Under R.C. 1925.01(D), attorneys are permitted, but not required, to represent parties to small-claim matters.

3.

to have attorney Daoudi represent her pro bono. No pro bono representation agreement, which would specify the terms of attorney Daoudi's representation of appellant, is in the record. Appellant admits she did not know attorney Daoudi prior to meeting him on December 3, 2024, although, contrary to attorney O'Neill's affidavit, attorney Daoudi claims he was "aware" of appellant's case before the two met based on his experience "as a clerk in small claims court and . . . knowledge about housing law and Plaintiff's leases."

{¶ 8} Nevertheless, we know appellant did not approach attorney Daoudi for representation in this matter on December 3, because appellant admits she waited alone in the hallway during which it was observed that she had no interaction with attorney Daoudi, who was also present. Appellant further admits attorney Daoudi entered the consultation room while attorney O'Neill was absent and initiated the ensuing discussion that led to agreeing he represent her pro bono.

{¶ 9} Upon attorney O'Neill's return to the consultation room, attorney Daoudi announced he was representing appellant. Apparently, no further discussion to resolve the case occurred, and everyone returned to the hallway to await the case to be called. When the case was called before the small-claims magistrate, the December 3, 2024 journalized entry does not indicate that attorney Daoudi verbally entered his appearance on behalf of appellant or that he planned to assert counterclaims on her behalf or that he intended to seek to transfer of the small-claims case to the regular docket under R.C. 1925.10. Rather, the magistrate's entry merely indicates, and the trial court affirms in a later judgment entry, the matter was continued to January 14, 2025, which was subsequently

4.

vacated and reset for March 11, to obtain completed service of process on Venn, who was not present on December 3.

{¶ 10} Twenty days after first meeting appellant, attorney Daoudi entered his appearance on behalf of appellant.

{¶ 11} Then on January 7, 2025, appellant, through attorney Daoudi, filed a motion to assert counterclaims of unjust enrichment and breach of contract and to specifically assert prayers for relief of $522.28 in damages under R.C. 5321.16(A) and (C) and for attorney fees of $200.00 under R.C. 5321.16(B).

{¶ 12} On the next day appellee filed a motion to disqualify attorney Daoudi for violating Prof.Cond.R. 7.3(a), regarding solicitation of clients, which states:

> A lawyer shall not by in-person . . . contact solicit professional employment when a significant motive for the lawyer's doing so is the lawyer's pecuniary gain, unless either of the following applies: (1) the person contacted is a lawyer; (2) the person contacted has a family, close personal, or prior professional relationship with the lawyer.

To support the motion, appellee pointed to attorney O'Neill's affidavit that attorney Daoudi initiated in-person contact with appellant to solicit his services. Appellee also pointed to appellant's own motion to assert counterclaims showing attorney Daoudi's motive for pecuniary gain from the solicitation is the prayer for relief for attorney fees, regardless of his initial motive.

{¶ 13} In response, appellant did not deny that attorney Daoudi solicited her for legal services on December 3, 2024. Rather, appellant argued that attorney Daoudi did not violate Prof.Cond.R. 7.3(a) because his motive for the solicitation was "to enforce legal rules, fight for social justice, and defend the rights of others." His motive was

5.

further described as a "desire to represent indigent and vulnerable parties who, like Toe, are facing damages claims that Daoudi believes are wrongful." Appellant conceded that the prayer for attorney fees "should not be made unless Toe actually incurred costs for an attorney," which should not occur where he claims "Daoudi has not asked for or received, nor will Daoudi ever ask for or receive, money *from anyone* to represent Defendant Helena Toe." (Emphasis added.) Appellant then stated she will amend the counterclaim to strike the prayer for attorney fees.

{¶ 14} As noted in the trial court's subsequent judgment, to date no amended motion has been filed, and appellant's prayer for attorney fees has never been withdrawn. Confusingly, appellant argues in support of her first assignment of error, "Had the trial court permitted Daoudi to amend the counterclaim, it would have eliminated the problem used to justify the disqualification[.]" In the absence of appellant filing such request to amend with the trial court, there is nothing for the trial court to "permit."

{¶ 15} After the parties filed additional pleadings and responses, on January 28, 2025, the trial court gave three reasons for granting appellee's motion to disqualify attorney Daoudi from representing Toe for violating Prof.Cond.R. 7.3(a).

{¶ 16} First, the trial court found that it was undisputed "that Defendant Toe was in fact approached by Attorney Daoudi who solicited his services as legal counsel," regardless of whether the in-person solicitation[4] occurred in the hallway or in the

---

[4] Official comment No. one to Prof.Cond.R. 7.3 defines a "solicitation" as "a communication initiated by the lawyer that is directed to a specific person and that offers to provide, or can reasonably be understood as offering to provide, legal services."

consultation room on December 3, 2024. The trial court further found, "Attorney Daoudi appears to have actively inserted himself into active and ongoing negotiations between parties in a matter which he had no actual interest in at the time, waiting for Plaintiff's counsel to leave the conference room to confer with Plaintiff's representative before entering the room and soliciting his legal services."

{¶ 17} Second, the trial court found "the Ohio Supreme Court did not intend to wholly abandon the notion that attorneys should conduct themselves in a manner which avoids even the appearance of impropriety," citing *Starner v. Johnson*, 2020-Ohio-4580 (10th Dist.), *Dickens v. J & E Custom Homes, Inc.*, 2010-Ohio-2634 (2d Dist.), *City of Whitehall, Ohio v. Olander*, 2017-Ohio-2869 (10th Dist.), and official comment Nos. two[5] and three[6] to Prof.Cond.R. 7.3. The trial court concluded, "It is clear to this court that the in-person solicitation of clients, especially in an environment such as the

---

[5] "There is a potential for abuse when a solicitation involves direct in-person . . . contact by a lawyer with someone known to need legal services. These forms of contact subject the person to the private importuning of the trained advocate in a direct interpersonal encounter. The person, who may already feel overwhelmed by the circumstances giving rise to the need for legal services, may find it difficult fully to evaluate all available alternatives with reasoned judgment and appropriate self-interest in the face of the lawyer's presence and insistence upon being retained immediately. The situation is fraught with the possibility of undue influence, intimidation, and over-reaching."

[6] "This potential for abuse inherent in direct in-person . . . solicitation justifies its prohibition, particularly since a lawyer has alternative means of conveying necessary information to those who may be in need of legal services. Communications can be mailed or transmitted by email or other electronic means that do not involve real-time contact and do not violate other laws governing solicitations. These forms of communication make it possible for the public to be informed about the need for legal services, and about the qualifications of available lawyers and law firms, without subjecting the public to direct in-person . . . persuasion that may overwhelm the person's judgment."

7.

courthouse itself, and in a time such as the penultimate minute before a hearing, is to be generally discouraged or viewed ion an unfavorable light."

{¶ 18} Third, the trial court found that the Ohio Rules of Professional Conduct "do not allow an attorney to weigh pecuniary gain with any altruistic motives" because even permitted forms of solicitation can be abused, citing official comment No. three to Prof.Cond.R. 7.3. Although appellant argued that the attorney fees sought under R.C. 5321.16(B) for attorney Daoudi were "a small hourly rate as a newly minted attorney," the trial court found that asserting a claim for attorney fees "and later stat[ing] that those fees are a pittance is counterintuitive."

{¶ 19} The trial court explained why it found pecuniary gain was a significant motive to attorney Daoudi:

> Attorney Daoudi does not deny the solicitation, and requests the statutorily-permitted 'reasonable attorney fees,' which are a rarity in Ohio specifically, being an 'American Rule' jurisdiction, meaning that parties involved in litigation generally pay their own attorney fees, except when mandated by statute, contract, or agreement. Those fees are not mandated by statute, and the non assertion of that part of the claim would have simply defaulted back to the 'American Rule,' as this court has consistently held.

{¶ 20} Appellant submitted no contract or agreement to support a claim against appellant for attorney fees. Contrary to appellant's claim, attorney fees are not mandated by R.C. 5321.16(B).[7] Specifically, under R.C. 5321.16(C), "If the landlord fails to

---

[7] "Any deduction from the security deposit shall be itemized and identified by the landlord in a written notice delivered to the tenant together with the amount due, within thirty days after termination of the rental agreement and delivery of possession. The tenant shall provide the landlord in writing with a forwarding address or new address to which the written notice and amount due from the landlord may be sent. If the tenant fails

8.

comply with [R.C. 5321.16(B)], the tenant *may* recover the property and money due him, together with damages in an amount equal to the amount wrongfully withheld, and reasonable attorneys fees." (Emphasis added.) Finally, the trial court found that appellant had not yet withdrawn her requested relief for attorney fees with the intention of "result[ing] in Attorney Daoudi's pecuniary gain."

> The court's conclusion therefore, is that Attorney Daoudi did either inappropriately or in a manner which appears inappropriate solicit his legal services to Defendant Toe, and as a result of that solicitation did attempt to assert a claim which would have resulted in Attorney Daoudi's pecuniary gain, and said claim would not have resulted in such if not specifically asserted to include attorney fees.

{¶ 21} Appellant timely appealed the trial court's judgment.

## II. Attorney Disqualification

{¶ 22} We review the trial court's decision to disqualify attorney Daoudi for an abuse of discretion. *155 N. High, Ltd. v. Cincinnati Ins. Co.*, 72 Ohio St.3d 423 (1995), syllabus. An abuse of discretion occurs when "a court [is] exercising its judgment, in an unwarranted way, in regard to a matter over which it has discretionary authority." *Johnson v. Abdullah*, 2021-Ohio-3304, ¶ 35.

{¶ 23} This matter is not about disciplining an attorney, proceedings over which the Ohio Supreme Court has exclusive original jurisdiction. *Royal Indem. Co. v. J.C. Penney Co.*, 27 Ohio St.3d 31, 34 (1986). This matter rests with the trial court's inherent power to dismiss or disqualify an attorney from a case where the attorney cannot, or will

---

to provide the landlord with the forwarding or new address as required, the tenant shall not be entitled to damages or attorneys fees under [R.C. 5321.16(C)]."

9.

not, comply with the Rules of Professional Conduct when representing a client in that court. *Mentor Lagoons, Inc. v. Rubin*, 31 Ohio St.3d 256, 259-60 (1987); *Royal Indem.* at 34 ("The trial court's power to protect its pending proceedings includes the authority to dismiss an attorney who cannot, or will not, take part in them with a reasonable degree of propriety."); *Horen v. Toledo Pub. School Dist. Bd. of Edn.*, 2007-Ohio-6883, ¶ 21 (6th Dist.) ("courts have the inherent power to disqualify an attorney from acting as counsel in a case where the attorney cannot or will not comply with the Code of Professional Responsibility [now Rules of Professional Conduct] and such action is necessary to protect the dignity and authority of the court.").

{¶ 24} "The burden of proving that disqualification is necessary is upon the moving party." *Id.* at ¶ 22; *Dawn G. v. Michael L.G.*, 2004-Ohio-4920, ¶ 8 (6th Dist.) ("The party seeking for the disqualification bears the burden of demonstrating the reason for disqualification.")

{¶ 25} "Disqualification of an attorney is a drastic measure that should not be imposed unless it is absolutely necessary." *Reid v. Reid*, 2023-Ohio-3140, ¶ 24 (6th Dist.). Disqualification requires striking a delicate balance between, on the one hand, the consideration of appellant's prerogative to proceed with counsel of her choice, and, on the other hand, the need to uphold ethical conduct by licensed attorneys in the courts of law. *Spivey v. Bender*, 77 Ohio App.3d 17, 22 (6th Dist. 1991); *Horen* at ¶ 21. A violation of the Ohio Rules of Professional Conduct does not necessarily warrant disqualification of a lawyer in pending litigation. *Cargould v. Manning*, 2009-Ohio-5853, ¶ 10 (10th Dist.), citing Prof.Cond.R. Preamble No. 20; *see Dawn G. v. Michael L.G.*, 10.

2004-Ohio-4920, ¶ 8 (6th Dist.) (evaluating predecessor code to Ohio Rules of Professional Conduct). "Disqualification questions are intensely fact-specific, and it is essential to approach such problems with a keen sense of practicality as well as a precise picture of the underlying facts." *Spivey* at 22.

{¶ 26} Here, the trial court found that attorney Daoudi violated Prof.Cond.R. 7.3(a). The objective of Prof.Cond.R. 7.3(a) is to prevent harmful attorney solicitation, particularly where the potential client is under "adverse circumstances." *Columbus Bar Assn. v. Bahan*, 2020-Ohio-434, ¶ 10. Although appellant argues in her first assignment of error that nothing is remotely similar between her case and *Bahan*, she admits she was "nervous and scared" waiting alone in the hallway outside of the small-claims courtroom when attorney Daoudi approached her, and in appellant's opposition to appellee's motion attorney Daoudi described appellant as "vulnerable" while "facing damages claims that Daoudi believes are wrongful." In such adverse circumstances there is a high potential for abuse by the attorney. *Id.* While Prof.Cond.R. 7.3(a) does not prohibit attorney Daoudi from providing in-person unsolicited legal advice to appellant, it does forbid him from providing unsolicited in-person legal advice "to obtain employment for a fee" unless an exception[8] applies. *Id.* 10. Thus, "Prof.Cond.R. 7.3(a) is violated when an attorney attempts to represent a person for a fee, that person is not an attorney and is unknown to the attorney, and the representation arises from in-person and unsolicited legal advice."

---

[8] There are four exceptions under Prof.Cond.R. 7.3(A), where the person contacted by the lawyer: (1) is a lawyer, (2) has a familial relationship with the lawyer, (3) has a close personal relationship with the lawyer, or (4) has a prior professional relationship with the lawyer.

*Id.* at ¶ 11. Proof of actual harm to appellant is not required to sustain a violation of Prof.Cond.R. 7.3. *Id.* at ¶ 12.

{¶ 27} Appellant concedes in her first assignment of error that attorney Daoudi arguably solicited appellant with his legal services during the in-person meeting on December 3, 2024. However, appellant argues attorney Daoudi did not violate Prof.Cond.R. 7.3(A) because he did not do so with a significant motive for pecuniary gain. Appellant argues the meaning of "significant" is synonymous with "substantial," citing *State v. Waddy*, 1989 WL 133508, *19 (10th Dist. Nov. 2, 1989) (evaluating "substantial" as used in Evid.R. 403) and R.C. 2901(A)(7) (defining "risk" as used in the criminal code). Appellant concludes that the plain meaning of "significant" under Prof.Cond.R. 7.3(A) is, according to an online Merriam-Webster dictionary, a noticeable or measurably large amount, and $200 is a "pittance." We disagree.

{¶ 28} The significance of the pecuniary gain motive under Prof.Cond.R. 7.3(A) is not measured solely by the dollar amount requested, but by providing unsolicited in-person legal advice to obtain employment for a fee without an applicable exception. *Bahan* at ¶ 10. Attorney Daoudi and appellant admit that his legal services were free and will always be free because attorney Daoudi will never ask for or receive money from anyone for his legal services to appellant. Thus, appellant's deliberate prayer for relief for an attorney fee in her attorney Daoudi-drafted motion, regardless of the amount, indicates its significance to attorney Daoudi for his legal services to her. The significance is reinforced by appellant's failure to amend or withdraw her motion seeking an award for such "free" service.

12.

{¶ 29} A pro bono attorney should not seek to recover fees after committing to free representation. Unlike attorney Daoudi's written pro bono agreement with a non-party to this case, which appellant included in the record of this matter, appellant does not disclose any details about her pro bono agreement with attorney Daoudi, and we will not speculate. For example, we do not know whether appellant agreed for attorney Daoudi to seek payment for his pro bono legal services to appellant from appellee or anyone else. *Parks v. Aburahma*, 2022-Ohio-4253, ¶ 27 (11th Dist.). Nor do we know of any unusual circumstances surrounding attorney Daoudi's representation of appellant in this matter. *Hatch v. Hatch*, 2019-Ohio-1414, ¶ 31 (11th Dist.) ("Counsel agreed to the pro bono representation and, in light of this informed decision, it would be unreasonable and unfair, absent some unusual circumstances (e.g., vindictive, frivolous, or rankling conduct on appellee's behalf), which are not present here, to make appellee responsible for the services rendered by appellant's counsel."). We will accept appellant's insistence that attorney Daoudi will not seek payment from anyone for his pro bono representation of her.

{¶ 30} Appellant also argues the $200 attorney fees request will not be awarded to attorney Daoudi but will be awarded to appellant as his client. Even so, attorney fee awards under R.C. 5321.16(C) are understood to be costs, not damages, to which attorneys are entitled for their services in the civil action. *Christe v. GMS Mgt. Co.*, 88 Ohio St.3d 376, 378 (2000). The trial court's judgment entry expected attorney Daoudi to directly benefit if attorney fees were awarded in this matter: "as a result of that solicitation [of appellant] did attempt to assert a claim which would have resulted in

13.

Attorney Daoudi's pecuniary gain, and said claim would not have resulted in such if not specifically asserted to include attorney fees."

{¶ 31} Nevertheless, we find the trial court abused its discretion when it determined that attorney Daoudi violated Prof.Cond.R. 7.3(a). Appellee failed to meet its burden of proving that disqualification of attorney Daoudi was necessary. Despite attorney Daoudi's in-person solicitation on December 3, 2024, appellant avers that she hired him pro bono and is satisfied with his legal services to her. To deny appellant attorney Daoudi's pro bono legal representation in this small-claims matter is unwarranted where attorneys are permitted under R.C. 1925.01(D) and where attorney Daoudi insists he will not ever seek *from anyone* payment for his legal services to appellant. However, to ensure attorney Daoudi's compliance with Prof.Cond.R. 7.3(a), we reverse and remand this matter to the trial court with the instruction to reinstate attorney Daoudi's representation of appellant and to order stricken from the record appellant's request for attorney fees. Our decision does not determine the merits of the underlying small-claims complaint for damages filed by appellee against appellant and Venn.

{¶ 32} Appellant's first assignment of error is well-taken. In light of our decision on the first assignment of error, appellant's second assignment of error is moot. App.R. 12(A)(1)(c).

## III. Conclusion

{¶ 33} On consideration whereof, the judgment of the Toledo Municipal Court, Housing Division, is reversed and remanded with the instruction to reinstate attorney Daoudi's representation of appellant and to order stricken from the record appellant's request for attorney fees.

{¶ 34} Appellee is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment reversed<br>and remanded.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Thomas J. Osowik, J.                                                      _____
JUDGE

Myron C. Duhart, J.
CONCUR.                                                      _____
JUDGE

Gene A. Zmuda, J.
CONCURS AND WRITES                                      _____
SEPARATELY.                                                      JUDGE

**ZMUDA, J., concurring**

{¶ 35} I agree with the majority's finding that the trial court abused its discretion in ordering the disqualification of attorney Rashad Z. Daoudi. Because I would find the authority to award attorney fees was entirely within the control of the trial court, I

15.

disagree with the necessity of striking Daoudi's request for attorney fees or even considering his request as a basis for disqualification. Accordingly, I write separately in concurrence.

{¶ 36} The trial court determined Daoudi violated Prof.Cond.R. 7.3(a), prohibiting solicitation for pecuniary gain unless an exception applied. The solicitation was admitted, but the pecuniary gain was disputed. The trial court found the mere request for statutory attorney fees merited disqualification as the pecuniary gain under Prof.Cond.R. 7.3(a). As noted by the majority, an award of attorney fees under the applicable statute in this case is discretionary, providing the trial court *may* award attorney fees. R.C. 5321.16 (C).

{¶ 37} Disqualification is commonly considered due to an attorney's conflict of interest, but a trial court has inherent authority to order disqualification for "truly egregious misconduct which is likely to infect future proceedings." *State v. Byrd*, 2013-Ohio-3949, ¶ 23 (6th Dist.), quoting *Royal Indem. Co. v. J.C. Penney Co., Inc.,* 27 Ohio St.3d 31, 34 (1986). "This includes the inherent authority of dismissal or disqualification from a case if an attorney cannot, or will not, comply with the Code of Professional Responsibility when representing a client." *Id.* at ¶24*,* quoting *Mentor Lagoons, Inc. v. Rubin,* 31 Ohio St.3d 256, 259-260 (1987).

{¶ 38} Here, the prayer for statutory attorney fees in the pleadings could not become pecuniary gain unless the trial court awarded those fees in the exercise of its discretion. The record, moreover, demonstrated that Daoudi was not charging Ms. Toe for his representation. Thus, the mere request for fees in the prayer did not merit disqualification as an "action necessary to protect the dignity and authority of the court."

16.

(Citation omitted) *Horen v. Toledo Pub. School Dist. Bd. of Edn.,* 2007-Ohio-6883, ¶ 21 (6th Dist.)

{¶ 39} For this reason, I agree with the majority that disqualification was an extreme measure not warranted by the facts, and I respectfully concur in reversing the judgment of the trial court.

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.